In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1230

HEARTWOOD, INC., et al.,

Plaintiffs-Appellants,

v.

United States Forest Service, et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 98 C 4289--J. Phil Gilbert, Judge.


Argued June 6, 2000--Decided October 18, 2000


  Before Bauer, Manion, and Williams, Circuit Judges.

  Williams, Circuit Judge. Heartwood, Inc., Jim
Bensman, and Mark Donham (collectively,
"Plaintiffs") challenge the district court's
grant of summary judgment in favor of Defendants,
the United States Forest Service and Mike
Dombeck, Chief of the Forest Service, as to Count
II of their complaint. In Count II, Heartwood
alleged that when the Forest Service ("Service")
adopted a rule excluding certain classes of
Service action from procedural safeguards
designed to determine the environmental impact of
those actions, it violated the National
Environmental Policy Act ("NEPA"), 42 U.S.C. sec.
4321, et seq., and the Administrative Procedures
Act ("APA"), 5 U.S.C. sec. 706. Plaintiffs
maintain that the Service violated certain
Council on Environmental Quality ("CEQ")
regulations, by: (1) not conducting an
environmental assessment ("EA") and issuing a
finding of no significant environmental impact or
seeking an environmental impact statement
("EIS"); (2) failing to address or consider
extraordinary circumstances before issuing the
categorical exclusions ("CEs"); and (3) utilizing
a case-by-case CE procedure. The district court
concluded that the Service did not need to
prepare an EA or an EIS before adopting the rule
on categorical exclusions and granted the
Service's motion for summary judgment on that
claim. Heartwood now appeals, and, because

neither NEPA nor the APA requires the Service to perform an EA or an EIS before promulgating its procedures for creating CEs, we affirm the judgment of the district court.

I

Plaintiffs mount a facial challenge to certain categorical exclusions ("CEs") that have been promulgated by the United States Forest Service, pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. sec. 4321 et seq., as well as the Administrative Procedures Act, 5 U.S.C. sec. 706./1 NEPA was enacted to regulate government activity that significantly impacts the environment and "to help public officials make decisions that are based on an understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. sec. 1500.1(c). As such, NEPA is the "basic national charter for protection of the environment." Id.

The Council on Environmental Quality ("CEQ") administers NEPA and promulgates regulations related to NEPA that are binding on federal agencies. See 42 U.S.C. sec.sec. 4342, 4344(3); 40 C.F.R. sec.sec. 1501-08. Every federal agency then drafts its own administrative regulations to implement and supplement the CEQ regulations. See 40 C.F.R. sec. 1507.3.

To effectuate the goals of NEPA, the CEQ created rules requiring agencies to establish implementing procedures that facilitate the evaluation of management decisions and the environmental effects of proposed federal agency actions. Under these guidelines, an agency must identify those actions which normally require an environmental impact statement, or "EIS." See 40 C.F.R. sec. 1501.4(a)(1). An EIS is required for "major federal actions significantly affecting the quality of the environment." 40 C.F.R. sec. 1508.9. The report itself is a detailed analysis and study conducted to determine if, or the extent to which, a particular agency action will impact the environment.

In order to determine whether a particular proposed action requires the preparation of an EIS, agencies perform an environmental assessment ("EA"). An EA is a public document (shorter than an EIS) that contains information pertaining to the need for the proposed action, other alternatives, the environmental impact of the proposal and its alternatives, and other relevant information. An agency may prepare an EA for one of several reasons: (1) to provide evidence and analysis that establish whether or not an EIS or a Finding of No Significant Impact ("FONSI")

should be prepared; (2) to help the agency comply with NEPA when no EIS is necessary; and (3) to facilitate preparation of an EIS when one is necessary. See 40 C.F.R. sec. 1508.9(a).

When an agency identifies certain actions that do not have any significant effect on the environment, the agency may classify those actions as categorical exclusions or CEs. Under NEPA and CEQ regulations, if an action falls within a particular categorical exclusion, the agency need prepare neither an EIS nor an EA. The CEQ requires federal agencies to design procedures for establishing CEs. Specifically, a CE is

a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (sec. 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required. An agency may decide to prepare environmental assessments for the reasons stated in sec. 1508.9 even though it is not required to do so. Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

40 C.F.R. sec. 1508.4.

At issue are a set of new policies and procedures established to replace those originally published in the Federal Register in June 1985 (50 Fed. Reg. 26078). Specifically, Plaintiffs are concerned about the impact of a set of CEs for timber harvests on Service land. When the Service adopted the new policy and procedures that set forth the challenged CEs, it published a notice which read:

Based on experience and environmental analysis, the implementation of the revised Forest Service environmental policy and procedures will not significantly affect the quality of the human environment, individually or cumulatively. Therefore, this action is categorically excluded from documentation in an environmental impact statement or an environmental assessment.

The Service gave notice on April 29, 1991 that it was adopting revised policies and procedures for implementing NEPA and CEQ regulations and set forth its proposal for those new policies and procedures. The Service did not produce a formal document in the form of an EA or an EIS prior to publishing the notice. After the Service made the

proposed new policies and procedures available for public comment, Plaintiff Bensman raised his concerns in a comment submitted on June 25, 1991. Plaintiff Dobham presented his comments one day later. In a notice published on September 18, 1992, the Service announced that it had adopted the new policies and procedures that would become effective September 21, 1992. Afterwards, Plaintiff Donham made a Freedom of Information Act ("FOIA") request seeking correspondence between the Service and the CEQ about the process that led to the new policies and procedures and later requested records regarding the Service promulgation of the challenged NEPA rules. None of the documents sent to Donham was correspondence between the CEQ and Service concerning the challenged rulemaking process.

Plaintiffs' complaint contained three separate counts./2 On appeal, Plaintiffs challenge only the district court's ruling on Count II. In short, Plaintiffs maintain that, in adopting its procedures for identifying CEs, the Service violated NEPA and the APA, as well as other CEQ and Department of Agriculture regulations./3 They claim that the Service, (1) failed to conduct an EA on the proposed CE procedures and instead issued a finding of no significant impact ("FONSI") for the CE procedures (or alternatively, failed to conduct a more extensive EIS once it was known that a FONSI was not appropriate); (2) failed to address or consider extraordinary circumstances before issuing the CEs; and (3) utilized a "case-by-case" CE procedure in part in an attempt to avoid NEPA requirements. On a motion for summary judgment, the district court ruled in favor of the Service on Count II./4

II
A. Justiciability

As always, before the court may consider the merits of a case, we must determine whether Plaintiffs' have presented a justiciable claim. The Service insists that since Plaintiffs have challenged Service plans rather than a specific action that definitively affects a particular forest area, this challenge raises a question as to both standing and ripeness.

1. Standing

The Service maintains that Plaintiffs have failed to establish that they suffered a cognizable injury. Under Article III of the Constitution, before a plaintiff may seek redress in court, he or she must have standing. See U.S. Const. art. III. To have standing, Plaintiffs

must show three things: (1) injury in fact (the actual or imminent invasion of a concrete and particularized interest), (2) causation (a causal connection between the defendant's actions and the injury), and (3) redressability (the likelihood that the injury is redressable by a favorable court decision). See Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 103-04 (1998); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Siding with Heartwood, the district court held that plaintiffs had standing and wrote:

[B]ecause they do allege that they use and enjoy the Service lands upon which their claims are based, both in the Southern District of Illinois and elsewhere throughout the United States, Service decisions here 'will diminish this use and enjoyment.' This potential harm would result directly from the Service's lack of compliance with NEPA and federal regulations, so that the harms would be 'causally connected' to the defendants' actions.

The Supreme Court recently held that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends of the Earth v. Laidlaw Evtl. Servs., 120 S.Ct. 693, 705 (2000) (citations omitted). Faced with a question similar to the one posed here, in Rhodes v. Johnson, 153 F.3d 785, 787 (7th Cir. 1998), we held that the plaintiffs had standing. In Rhodes, the court permitted plaintiffs to challenge the categorical exclusion of controlled burn and shrub removal in a local forest preserve. "[P]laintiffs do have standing because they allege that they use Burke Branch, that the defendant's decision will diminish this use and enjoyment, and that the defendant's failure to permit them to participate in the public review of the decision is causally connected to their harm. This is enough to show Article III standing." Rhodes, 153 F.3d at 787.

The Service makes no attempt to distinguish the instant case from Rhodes, and with good reason. The facts in Rhodes are similar to those in this case. The Rhodes plaintiffs challenged a forest ranger's authority to burn and remove shrubs without conducting an EA. In his defense, the forest ranger relied on the fact that the controlled burn and shrub removal were categorical exclusions under the Service's implementing procedures. Rhodes, 153 F.3d at 786. Here, Plaintiffs challenge the Service's establishment of CEs without performing an EA on the overall effect of the rules. While there may

be a subtle distinction between the claims in the two cases (Rhodes, categorical exclusion of rules on burning shrubs compared with Heartwood, categorical exclusion of rules setting forth categorical exclusions), we do not think it is a significant one.

The Service also suggests that Plaintiffs' claims implicate a procedural right only. Lujan v. Defenders of Wildlife, 504 U.S. at 571-72, makes clear that assertion of a procedural right, unconnected to a plaintiff's concrete harm, is not enough to convey standing. Here, Plaintiffs assert that the Service deprived them of the opportunity to participate in the process of establishing the rules for creating categorical exclusions. However, Lujan also says that "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." Lujan, 504 U.S. at 573 n.7. Still, the Service insists that Plaintiffs' failure to specify the when, where, and how of its injury should be fatal. We believe that Plaintiffs have sufficiently alleged that they would use and enjoy Service lands that they believe would be affected by the challenged policy decisions.

Under Rhodes, where the Service fails "to permit [plaintiffs] to participate in the public review of the decision" to establish a categorical exclusion and forego performance of an EA, and this decision affects plaintiffs' ability to use and enjoy Service land, this is enough to show Article III standing. Plaintiffs allege more than just a procedural injury here. They claim that their use of certain national forests and other areas was harmed by the enactment of several categorical exclusions and that if an EA or EIS had been performed, the Service could have made that known and Plaintiffs' harm would have been lessened or avoided. Plaintiffs present detailed information as to how their interests are affected by the categorical exclusion rule in various declarations from Heartwood members./5 As such, we conclude that Plaintiffs have standing.


  2. Ripeness

The Service maintains that "only when a specific project is authorized at a specific National Forest pursuant to a categorical exclusion will a challenge to that categorical exclusion be ripe for judicial resolution." In support of this argument, the Service relies upon the Supreme Court's decision in Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).

In that case, after reviewing whether, (1) delayed review of an agency decision would cause hardship to plaintiffs; (2) judicial intervention would inappropriately interfere with further administrative action; and (3) the courts would benefit from further factual development of the issues presented, the court held that the plaintiff's claims were not ripe. Id., 523 U.S. at 733 (involving a challenge to a plan to permit logging in certain forests, but not the cutting of any trees). Yet, in the same case, the Court distinguished suits brought pursuant to NEPA and made clear that "a person with standing who is injured by a failure to comply with a NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." Id. at 737.

Plaintiffs allege that under Defendant's theory of ripeness, the Service's failure to produce an EA or an EIS before establishing the rules creating new CEs means that they will be unable to challenge Service activity in areas they use and enjoy. In an extended discussion of standing and ripeness, this court has held that "a plaintiff clearly has standing to sue where there is a concrete injury underlying the procedural default even if the plan [is] not implemented immediately." Sierra Club v. Marita, 46 F.3d 606, 612 (7th Cir. 1995) (plaintiff appealed issuance of final management plan which would direct Service activities in particular areas). "Once the plan has passed administrative review, the procedural injury has been inflicted. Unless a plaintiff's purported interest in the matter is wholly speculative, waiting any longer to address that injury makes little sense." Id. Very much like the plaintiffs in Marita, Plaintiffs in this case "need not wait to challenge a specific project when their grievance is with an overall plan." Marita, 46 F.3d at 614. Having found that Plaintiffs' claim is justiciable, we will proceed to the merits.

B. Merits

Plaintiffs maintain that the Service violated NEPA by failing to prepare an EA to analyze the effects of its CE rules. In response, the Service contends that when it established the CE rules, it was adopting an agency procedure, not instituting a "federal action" to which NEPA's EA and EIS regulations apply. The Service argues it did all that it was required to do, in that it complied with the CEQ's NEPA regulations by consulting with the CEQ during development of the CEs and by obtaining proper CEQ review. The Service maintains that NEPA did not require it to conduct an EA or an EIS when creating procedures for the identification of CEs. The question then

is whether the promulgation of CE rules, in this instance, can be considered a major federal action of the type listed under sec. 4332(2)(C).

The district court agreed with the Service and rejected Plaintiffs' argument calling for an EA on the impact of the proposed categorical exclusion rules. The court noted, "[t]he adoption of a list of categories is not implementation of a specific policy or statutory program, nor a plan for action in any sense of the phrase. . . . To propose that such a document be prepared for types (categories) of actions that do not concern a specific proposed action in a specific location seems beyond the Court's comprehension." The court also found that an EA or EIS would have been meaningless. Since such an EA would have come prior to the adoption of the individual categorical exclusions, the Service could not have provided an accurate analysis of the potential environmental consequences posed by the exclusion of the different CEs.

APA, 5 U.S.C. sec. 706 governs our review of the Service's actions. Under this provision, when reviewing the actions of an administrative agency, we must determine whether an agency action is, (1) arbitrary and capricious; (2) an abuse of discretion; or (3) otherwise not in accordance with the law. We may not substitute the court's judgment for that of the agency. See FCC v. National Citizens Committee for Broadcasting, 436 U.S. 775, 802 (1978). Additionally, when reviewing an agency's interpretation of its own implementing procedures, the court should give substantial deference to that agency's interpretation. See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Rhodes v. Johnson, 153 F.3d at 789. The Supreme Court has held that ultimately, the standard of review when examining an agency's decision under NEPA is a narrow one. See Marsh v. Oregon Nat'l Resources Council, 490 U.S. 360, 378 (1989).

We find that the district court did not err in reaching the conclusion that the Service had not violated NEPA or the APA. The Service action creating CEs looks more like an implementing procedure than a federal action of the type contemplated in 42 U.S.C. sec. 4332(2)(C). The CEQ defines "major Federal action" as "actions with effects that may be major and which are potentially subject to Federal control and responsibility. . . . Actions include new and continuing activities . . . new or revised agency rules, regulations, plans, policies or procedures; and legislative proposals." 40 C.F.R. sec. 1508.18. The regulation then lists several categories of Major Federal action, including

"Adoption of official policy, such as rules and regulations, and interpretations adopted pursuant to the APA, 5 U.S.C. sec. 551, et seq." Id.

Plaintiffs believe that the promulgation of the CE rules falls into one of the categories listed in 40 C.F.R. sec. 1508.18. It does not. The creation of new CEs is an agency procedure. The CEs are not proposed actions, they are categories of actions for which an EA or EIS has been deemed unnecessary. The CEQ promulgated a rule requiring agencies to establish "agency procedures" that include "specific criteria for and identification of those typical classes of action . . . which normally do not require either an environmental impact statement or an environmental assessment," in other words, procedures to establish CEs. 40 C.F.R. sec. 1507.3. The regulations simply define a CE as a category of actions found to have no significant effect on the environment "in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. sec. 1508.4. For these procedures, the CEQ does not mandate that agencies conduct an EA before classifying an action as a CE and we must give great deference to the CEQ's interpretation of its own regulations. Andus v. Sierra Club, 442 U.S. 347, 358 (1979).

Additionally, categorical exclusions, by definition, do not have a significant effect on the quality of the human environment./6 The Service and other agencies are authorized under NEPA to create their own procedures and to utilize CEs in order to make a threshold determination as to which actions normally have a significant effect on the environment. The Service provided the following statement in its notice adopting the new policy and procedure for categorical exclusions:

Based on experience and environmental analysis, the implementation of the revised Forest Service environmental policy and procedures will not significantly affect the quality of the human environment, individually or cumulatively. Therefore, this action is categorically excluded from documentation in an environmental impact statement or an environmental assessment.

57 Fed. Reg. 43,180 (Sept. 18, 1992) (emphasis added). The language of this statement does not indicate that by enacting this rule, the Service would be authorizing any activity or committing any resources to a project that might impact the environment. Yet, Plaintiffs seem to suggest that conducting an EA is the only way to determine whether or not the revised policy and procedures will significantly affect the quality of the environment. We have found nothing in the

statute, the regulations or the case law to substantiate this claim./7 Congress has empowered the CEQ to review an agency's procedures for identifying classes of activity that will be categorically excluded from EA and EIS requirements. The CEQ apparently considered the Service's rules for identifying CEs as procedures and not the type of federal action that triggers the requirements of sec. 4332(2)(C). Plaintiffs have not presented any evidence or made us aware of any law to suggest that we should question the CEQ's judgment.

Plaintiffs make a number of other arguments, many of which simply confuse the issues involved. Much of the confusion is due to the fact that Plaintiffs misconstrue the Service's position. The Service does not argue that NEPA does not apply to CEs, only that under NEPA and the regulations interpreting NEPA, its decision to issue the CE rules without doing an EA was proper. Many of the cases Plaintiffs cite in support of their argument are inapposite. The plaintiffs in those cases challenge an agency's decision not to conduct an EA for a specific project or agency proposal that the agency deemed to fall within a particular CE. That is not the issue presented here. Here, Plaintiffs challenge the Service's creation of the categories in and of themselves without preparing an EA. While the Service could have prepared an EA to try and gauge the impact specific CEs might have, it was not required to do so. As such, in deciding against using its resources to conduct a formal EA before promulgating the new CEs, the Service did not violate NEPA or the APA, nor did it abuse its discretion or act arbitrarily or capriciously.

III

Having found that neither NEPA nor CEQ regulations required the Service to conduct an EA or an EIS prior to the promulgation of its procedures creating categorical exclusions, we AFFIRM the judgment of the district court.

/1 Plaintiff Heartwood, Inc. is a not-for-profit corporation which operates as a coalition of environmental organizations. Plaintiff Mark Donham owns land and lives adjacent to the Shawnee National Forest and Plaintiff Jim Bensman uses the national forests.

/2 In Count I of their complaint, plaintiffs assert that the Service violated C.F.R. sec. 1507.3, by failing to obtain the necessary review by the CEQ prior to adopting the challenged CEs. In Count

III, Plaintiffs challenge the timber harvest CE, see FSH 1909.15, Ch. 20, sec. 31.2(4); 57 Fed. Reg. at 43, 209, and argue that the defendants violated NEPA and CEQ regulations by failing to study the environmental consequences of the CE, to consider and to respond to public comments prior to the CEs adoption. See 40 C.F.R. sec. 1508.4.

/3 The Forest Service is a subunit of the Department of Agriculture. The Department of Agriculture adopted environmental regulations to fulfill its NEPA obligations and the Forest Service compiles its rules and procedures in the Forest Service Environmental Handbook. It is the Service Environmental Handbook which contains the challenged CEs.

/4 The district court also granted defendant's motion for summary judgment on Count I, but denied their motion on Count III. Judgment was entered in favor of the plaintiffs on Count III.

/5 We find Heartwood's argument as to "informational" injury compelling as well. NEPA requires agencies to conduct EA's in order to provide stakeholders with information necessary to monitor agency activity. Without an EA, interested parties have no way to comment on or to appeal decisions made by an agency. The Court has found a cognizable injury-in-fact for plaintiffs who are deprived of this information. Federal Election Commission v. Akins, 524 U.S. 11, 21-25 (1998).

/6 As noted above, 40 C.F.R. sec. 1508.4 defines categorical exclusion as "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations and for which, therefore, neither an environmental assessment nor an environmental impact statement is required."

/7 40 C.F.R. sec. 1507.3 reads in part, when the agency is a department, major subunits are encouraged (with the consent of the department) to adopt their own procedures. Such procedures shall not paraphrase these regulations. They shall confine themselves to implementing procedures. Each agency shall consult with the CEQ while developing its procedures and before publishing them in the Federal Register for comment . . . . The procedures shall be adopted only after an opportunity for public review and after review by the [CEQ] for conformity with the Act and these regulations.