**Rodney BURTON, Plaintiff–Appellant,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant–Appellee.**

No. 00–3475.

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2001.[*]

Decided June 18, 2001.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before MANION, ROVNER and EVANS, Circuit Judges.

## ORDER [1]

Rodney Burton appeals from the district court's order upholding the reduction of

1. Larry G. Massanari is substituted for his predecessor, William A. Halter, as acting

398

his Social Security Disability Insurance benefits ("DIB") based on his receipt of workers' compensation benefits. We affirm.

Burton has applied for DIB a number of times since he was injured in a workplace explosion in 1969. The Social Security Administration ("SSA") initially awarded Burton a closed period of disability and DIB from July 1969 to November 1970. Burton applied again some time after April 1973 and the SSA held a hearing on this claim in December 1975 but the record does not include a final determination. Burton applied again for DIB in June 1980 and reported that, after his initial award, he filed a second claim that the SSA denied. Burton also reported that he had been receiving $952.00 per month in workers' compensation since 1969. The SSA denied the 1980 claim based on an earlier denial that included a finding that Burton was not disabled. Burton sought no review of the denial.

This case arises out of Burton's most recent application in February 1993, which resulted in a determination that Burton was entitled to receive DIB retroactive to June 1979, but that the benefits would be offset by the amount of workers' compensation he had received since June 1980. Burton requested that the SSA reconsider the computation of his DIB, and claimed that the SSA never made a final determination of his 1973 claim. The SSA reaffirmed its original decision, concluding that the 1973 claim had been denied, and denying any request by Burton to reopen that claim.

Burton requested a hearing. The Administrative Law Judge ("ALJ") held a pre-hearing conference, and Burton requested that the ALJ subpoena the Department of Labor ("DOL") for his workers' compensation records in order to determine whether DOL payments to Burton (called "scheduled awards") were subject to offset like his workers' compensation. The ALJ subsequently decided that the SSA had correctly calculated Burton's disability benefits. In affirming the SSA's calculation, the ALJ rejected Burton's arguments (1) that the SSA had applied the wrong regulation in its calculation; (2) that the SSA could not offset before June 1994 when, Burton claimed, the SSA first received notice of his entitlement to receive workers' compensation benefits; and (3) that Burton's "scheduled awards" were not subject to offsetting. The ALJ also denied Burton's request to subpoena the DOL.

The ALJ's decision became final on September 28, 1999. On October 26, 1999, Burton filed a complaint seeking judicial review of the ALJ's decision. The district court upheld the ALJ's determination, concluding that it was supported by substantial evidence.

We are mindful that the ALJ's factual determinations are conclusive if supported by substantial evidence and reached using the correct legal conclusions. *See* 42 U.S.C. § 405(g); *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000). "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's findings. *Id.* In our review, however, we will not substitute our judgment for the ALJ's by reweighing evidence or resolving material conflicts. *Id.*

### The Application Date

■ Burton first argues that his DIB should be retroactive to December 31, 1975 (instead of July 1979) based on an application he filed in 1973. He claims that even though the SSA held a hearing on the 1973 claim in December 1975, he never received

a decision. As a result, he claims, the SSA never finally adjudicated the 1973 claim and he can be awarded benefits on that claim without reopening any of the SSA's final determinations. The SSA, on the other hand, contends that substantial record evidence shows that the 1973 claim was denied. The SSA claims that, as a result, in order to award benefits to Burton based on the 1973 claim, we would have to order the SSA to reopen the claim notwithstanding the fact that the SSA has denied Burton's request to do so. The SSA asserts that we lack jurisdiction to review its denial of Burton's request to reopen.

▇ We lack jurisdiction to review the SSA's refusal to reopen previous determinations except for those refusals having constitutional implications. *Califano v. Sanders,* 430 U.S. 99, 108–09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Campbell v. Shalala,* 988 F.2d 741, 745 (7th Cir.1993). In 1995 the SSA denied Burton's request "to reopen any prior application." If it is true that the 1973 claim was denied then the SSA's refusal to reopen applies to the 1973 claim, and we have no authority to revisit that refusal.

Our review of the record reveals substantial evidence that the SSA in fact denied Burton's 1973 claim. Specifically, Burton admitted in his 1980 claim that after his initial DIB award, he filed a second claim that the SSA denied. This second claim could only be the 1973 claim because Burton only filed one claim between his initial award and the 1980 claim. Additionally, the SSA's denial of Burton's 1980 claim referred to the denial of an earlier claim at some point after December 1975–around the same time Burton says the hearing on his 1973 claim occurred. By the same token, Burton presented no evidence to suggest that the SSA did not deny the 1973 claim. The SSA's finding that it denied the 1973 claim thus is con-

clusive and we consequently lack jurisdiction to review the SSA's refusal to reopen that claim. As a result, we will not disturb the ALJ's finding that Burton was eligible to receive DIB retroactive to July 1979.

### *The Workers' Compensation Offset.*

Burton attacks the SSA's calculation of his workers' compensation offset on grounds (1) that the SSA cannot begin offsetting until June 1994 when, Burton says, the SSA first received notice of his entitlement to workers' compensation; (2) that the SSA calculated the offset under the wrong regulation; (3) that the ALJ lacked information to conclude that Burton's "scheduled award" payments from DOL are subject to offset, and thus erred in refusing to subpoena DOL regarding the definition of "scheduled award;" and (4) that the SSA calculated the offset based on inaccurate information about the amount of his workers compensation payments.

▇ We quickly dispense with Burton's notice argument. Although the SSA must receive notice that a claimant is entitled to workers' compensation before offsetting, *see* 20 C.F.R. § 404.408(a)(1)(ii), Burton reported in his 1980 claim that he had been receiving workers' compensation since 1969. This information is substantial evidence supporting the ALJ's decision that the SSA had notice in 1980 of Burton's entitlement to workers' compensation.

▇ Burton's contention that the SSA applied the wrong regulation is also meritless. He says that the SSA applied 20 C.F.R. § 404.408(a)(2) when it should have applied 20 C.F.R. § 404.408(a)(1). The ALJ rejected this argument. The ALJ noted that § 404.408(a)(1) requires that the SSA have notice of Burton's entitlement to workers' compensation before the SSA can offset it against his DIB. But

§ 404.408(a)(2) contains no such notice requirement. Therefore, if the SSA had applied § 404.408(a)(2), the SSA would have been able to begin offsetting Burton's workers' compensation as soon as he was eligible to receive DIB in July 1979. But the SSA did not do so. Rather, the SSA did not begin offsetting until June 1980—which is when the SSA first received notice of Burton's entitlement to workers' compensation. Thus, the ALJ concluded, the SSA's calculation of the workers' compensation offset was consistent with the notice requirements of § 404.408(a)(1) and not with § 404.408(a)(2) as Burton contends. We agree with the ALJ's analysis here, and note that Burton failed to cite anything in the record to support his assertion that the SSA applied § 404.408(a)(2). *See* Fed. R.App. P. 28(a)(9), (e); *United States v. Lanzotti,* 205 F.3d 951, 957 (7th Cir.), *cert. denied,* 530 U.S. 1277, 120 S.Ct. 2746, 147 L.Ed.2d 1009 (2000).

■ As for Burton's arguments about his "scheduled awards," some background is in order. The "scheduled awards" are payments the DOL makes to Burton under the provisions of the Federal Employees Compensation Act. They are meant to compensate him for the loss of use of his left arm and right hand. Burton argues that the "scheduled awards" are different than workers' compensation and thus not subject to offsetting. We think not. The applicable Social Security regulations provide that benefits will be reduced during any month in which the individual receives "periodic benefits under a workers' compensation law or plan of the United States ..." 20 C.F.R. § 404.408(a)(1)(i). The SSA has interpreted this regulation to apply to scheduled awards like Burton's that compensate for permanent loss of body parts, *see* Social Security Ruling 92–6c (adopting *Davidson v. Sullivan,* 942 F.2d 90 (1st Cir.1991)), and we must give substantial deference to the SSA's interpretation of its own regulations, *see Heartwood, Inc. v. United States Forest Serv.,* 230 F.3d 947, 954 (7th Cir.2000); *Sierra Res., Inc. v. Herman,* 213 F.3d 989, 992 (7th Cir.2000). The ALJ's decision that the "scheduled awards" are a periodic benefit subject to offsetting is supported by substantial evidence and legal authority.

■ As a result, the issuance of a subpoena to the DOL was unnecessary to determine the nature of the "scheduled awards." We also note, however, that Burton was not entitled to a subpoena because his representative admitted to the ALJ at the pre-hearing conference that "I have a feeling you won't get anything if you were to subpoena." *See* 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2) (party requesting a that the ALJ issue a subpoena must "state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena."); *see also Butera v. Apfel,* 173 F.3d 1049, 1058 (7th Cir.1999) (DIB claimant not entitled to subpoena two reviewing physicians where only offered reason-that physicians' opinions were based on an incomplete record-related to weight of evidence, not necessity of subpoena).

Burton's remaining contention is his conclusory assertion that the SSA calculated the offset based on "erroneous and incomplete information" from the DOL. Burton apparently claims that all of the information the SSA used to calculate his offset is unreliable because in 1994 the DOL told the SSA that Burton had been receiving workers' compensation payments of $462.25 per week since 1969. Burton says that the DOL information was wrong because the amount of his payments fluctuated. Burton makes no effort to develop his argument or put it into context. Is $ 462.25 an average? How did it play into the ALJ's findings? What is its relation-

ship to Burton's "scheduled awards?" Burton's argument amounts to a bare assertion that the SSA used incorrect information, and he thus has waived it. *See Muhich v. C.I.R.*, 238 F.3d 860, 864 n. 10 (7th Cir.2001) (taxpayer waived argument that denial of certain deductions was erroneous where argument relied on bare assertions that "substantial authority exists" to support the claim and that "a review of the entire record" would establish the merits); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim [for appellate review].").

AFFIRMED.