Rosemary RIORDAN, Plaintiff–Appellant,

v.

COMMONWEALTH EDISON COMPANY, Defendant–Appellee.

No. 97–1206.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 3, 1997.

Decided Oct. 17, 1997.

James J. Kupka (argued), Eugene F. Keefe, Alholm & Monahan, Chicago, IL, for Plaintiff–Appellant.

Sharon L. King, Sidley & Austin, Colleen K. Nouhan (argued), Commonwealth Edison Company, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Rosemary Riordan was married to James Riordan for over twenty years. They had five children. But in 1977 they separated and nine years after that they divorced. When James died in 1992, his employer, Commonwealth Edison ("ComEd"), paid a $50,000.00 death benefit to his second wife, Irene. Rosemary sued ComEd under ERISA; she claimed plan documents revealed James' intent that she receive the death benefit rather than Irene. After the case was removed to federal court, both sides agreed that the dispute could be resolved on the basis of the record and each filed a motion for summary judgment. The court granted ComEd's motion and denied Rosemary's. We affirm.

## I.

When James and Rosemary separated in 1977, they obtained a Judgment for Legal Separation from Cook County Circuit Court. The judgment did not legally end the marriage (only a Judgment for Dissolution can do that, *In Re Sutton*, 136 Ill.2d 441, 145 Ill.Dec. 890, 893, 557 N.E.2d 869, 872 (1990)), but it did order James to maintain his employer-sponsored life insurance policy for the benefit of his minor children. About a year after the order was issued, James filled out a "designation of beneficiary form" with ComEd in which he named Rosemary (on behalf of the children) as the beneficiary of his $50,000.00 death benefit. But because he was doing so pursuant to a court order, ComEd's benefits supervisor typed the word "irrevocable" on the face of the form.

By 1986 James' marriage to Rosemary was officially over; this time the circuit court issued a Judgment for Dissolution. According to the order, James Riordan was to name his remaining minor child (James) as his "irrevocable" beneficiary on his life insurance policy until the child turned 18, which would occur one year later in 1987. After reviewing the divorce decree the plan administrator wrote James stating: "You previously had the $50,000 irrevocably payable to your ex-wife (copy attached). The current divorce decree indicates irrevocable insurance to the minor child. Please complete the enclosed beneficiary card naming the minor child for the $50,000.00 and the balance payable to ____. Please sign and return." For whatever reason, James never got around to that, but in 1988, he married Irene, and shortly thereafter filed a new designation of beneficiary form with ComEd naming Irene as his sole beneficiary. Under the terms of ComEd's summary plan description, employees could change their beneficiaries "at any time by submitting a new Beneficiary Designation card" to the company. So when James died in 1992, ComEd paid his death benefit to

Irene. Under the divorce decree, Rosemary received a portion of James' pension.

About a year before he died, James asked his daughter (from his marriage to Rosemary) to keep some of his personal papers at her house. Two years after James' death, the daughter discovered his initial designation of beneficiary form that assigned his death benefit to Rosemary. She showed the form (with the notation "irrevocable" typed on its face) to her mother. Rosemary brought suit under ERISA, claiming that the $50,000.00 death benefit paid to Irene should have been paid to her.

## II.

■ At the outset, ComEd argues that Rosemary Riordan has committed a fatal mistake by suing the wrong entity—ComEd (her ex-husband's employer and the plan administrator) rather than the plan itself. It is true that ERISA permits suits to recover benefits only against the plan as an entity, *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir.1996), but we are not inclined to make this case known for that rule. ComEd did not pursue summary judgment on this basis. While we can affirm the judgment of the district court on any basis supported by the record, *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir.1997), the exact relationship between ComEd and the plan is not clearly set out. The plan documents themselves refer to ComEd and the plan nearly interchangeably, and the company designated itself as the plan's agent for service of process. So it is not surprising that Rosemary sued ComEd instead of the plan.

Of more immediate concern is a jurisdictional issue. The parties apparently agree that Rosemary Riordan has standing to sue ComEd, but such acquiescence is not enough. *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 802, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."). Only participants, beneficiaries or fiduciaries (and the Secretary of Labor) may sue under ERISA, 29 U.S.C. § 1132(a), and the district court treated Rosemary as a beneficiary. A "beneficiary" is defined by ERISA, § 1002(8), as "a person designated by a participant, or by the terms of the employee benefit plan, who is or may become entitled to a benefit thereunder." The typical beneficiary in an ERISA plan is a spouse, which obviously Rosemary no longer was. Nevertheless, the Eleventh Circuit has held "that the term 'Beneficiary' ... is broad enough to include the ex-wife of a participant of a plan, when she seeks benefits under the plan." *Brown v. Connecticut General Life Ins.*, 934 F.2d 1193, 1196 n. 4 (11th Cir.1991); *see also McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir.1990) (never questioning former wife's standing to sue under § 1132).

In reality the familial relationship between the plaintiff and the participant is irrelevant. Nothing under ERISA prevents the participant from designating a friend rather than a family member to be the beneficiary, or, as in this case, a second wife in lieu of a first. But where a family member such as a present or former spouse is not chosen as the beneficiary, she obviously is more likely to sue. That happened in *Sladek v. Bell System Mgmt. Pension Plan*, 880 F.2d 972 (7th Cir.1989), the only case cited by *Brown* to support its decision allowing ex-wives standing under ERISA. *Sladek* actually involved a spouse, not an ex-spouse, who sought to set aside her husband's election to accept increased lifetime benefits instead of a survivor annuity. Sladek wanted to set aside her husband's election on the basis of his alleged incompetency (he suffered from Alzheimer's disease), and we allowed her standing to sue because she was a potential beneficiary under her husband's plan. Under that plan, the annuity option was automatic if the participant made no election whatsoever, and the surviving spouse then was awarded the annuity. So if Sladek had been successful in setting aside her husband's election to forego the survivor annuity, the annuity would have been hers, and that was enough to qualify her as a potential beneficiary under ERISA and a bona fide plaintiff. Indeed, to deny Sladek standing as a non-beneficiary under ERISA would have "assumed the very matter at issue," *id.* at 979, namely, whether she

was the proper beneficiary because her husband's election was void.

■ There are obvious differences between Sladek and Rosemary Riordan. One was a spouse, the other an ex-spouse. But in each case the plaintiff's theory is that the last election the participant made was invalid or void (Sladek's husband's because of incompetency; James Riordan's because his first designation was "irrevocable"), and further that striking those elections meant they received the policy proceeds (Sladek because of the default terms of the plan; Rosemary Riordan because James' irrevocable designation named her). So Rosemary is just as much a potential beneficiary—at least under her theory of the case—as Sladek. Whether she is the *actual* beneficiary is another matter—a matter that turns on the merits of her claim. "To the extent doubt remains, *Firestone [Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989) ] tells us to treat as a 'participant' for jurisdictional purposes anyone with a colorable claim to benefits . . . , an approach equally applicable when a person claiming to be a 'beneficiary' files suit." *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991). Jurisdiction in a case like this one depends on whether Riordan has at least an "arguable claim," *id.*, and taking her theory of the case in a light most favorable to her, we determine that she does.

### III.

■ Riordan's claim that she is the *actual* or rightful beneficiary is another matter. To make her case she almost entirely depends upon the typed inscription "irrevocable" that appears on her husband's initial designation of beneficiary form filed with ComEd. Riordan insists that word created a binding contractual commitment with ComEd and she was the third-party beneficiary of that contract. The problem is that even if we determined that the designation of beneficiary card was a plan document (as Rosemary believes we should), the plan itself contains no mechanism for making an "irrevocable" designation of benefits. In fact, the plan provides for the opposite: participants are told they can change their beneficiaries "at

any time by submitting a new Beneficiary Designation card" to the company. After the divorce the plan administrator wrote James telling him he should designate his minor son as the beneficiary of the "$50,000.00 irrevocable" that was at that time payable to his ex-wife.

■ ERISA instructs courts to enforce strictly the terms of plans, see 29 U.S.C. § 1104(a)(1)(D) and *Kennedy*, 924 F.2d at 700. In circumstances where a plan provides liberal mechanisms for changing beneficiaries (as in this case), "strict" enforcement means allowing participants to do exactly that. After his divorce became final, after his obligations under the divorce decree toward his remaining minor child lapsed, and after he remarried, James Riordan took advantage of the plan terms and changed his beneficiary to his new wife, Irene. The plan administrator (the same entity that inscribed "irrevocable" onto the first designation card) apparently did not question the change for the same reason that we do not: the plan documents allowed it and even made it easy to do. In cases like this one "the documents control," *McMillan*, 913 F.2d at 312, and the last designation James Riordan made pursuant to the plan assigned his insurance proceeds to Irene Riordan, not Rosemary.

■ This might be a different case if Rosemary could point us to a court order (a "qualified domestic relations order" or QDRO under ERISA, 29 U.S.C. § 1056(d)(3)) that compelled ComEd to pay the proceeds of James' policy to Rosemary. ERISA contains an anti-alienation (non-assignability) clause, 29 U.S.C. § 1056(d)(1), but that restriction applies only to pension benefits, not welfare benefit plans such as life insurance. *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1083 (7th Cir.1994). When a divorce decree constitutes a QDRO by meeting ERISA's prerequisites (see 29 U.S.C. § 1056(d)(3)(C)), the terms of the decree may trump any contrary designation made by the plan participant. *Id.* That happened in *Wheaton* because a divorce decree ordered Frank Wheaton to maintain life insurance for the benefit of his minor children until they reached the age of majority. He remarried

and named his new wife as the beneficiary of his life insurance, and then died before his sons reached the age of majority. While there was little question that Wheaton's intent was that his widow receive the proceeds of his policy, the divorce decree was a valid QDRO and overrode that designation.

But Rosemary herself concedes that there is no QDRO in this case directing ComEd to pay out to her rather than to James Riordan's widow. And even if the separation agreement (ordering James Riordan to maintain his life insurance for the benefit of his minor children) or the divorce decree (ordering him to name James, his remaining minor child, as his beneficiary) constituted QDROs, there is no question that they expired by their terms in 1987 when the younger James turned 18. They certainly expired before James Riordan died in 1992.

There are no other arguments to make on Rosemary's behalf. The plan permitted her ex-husband to change his beneficiary, and no QDRO existed to forbid it. Ultimately, Rosemary's claim to the benefits rests entirely on the inscription of the word "irrevocable" on James Riordan's first designation of beneficiary card. It is a term that apparently does not appear in the plan, and a plan fiduciary such as ComEd has no right (again, absent a qualified court order) to refuse payment of welfare benefits to a beneficiary properly designated according to the terms of the plan. *Swaback v. American Information Technologies Corp.*, 103 F.3d 535, 540 (7th Cir.1996). Its duty is the opposite—to exactly apply the terms of the plan. *See* 29 U.S.C. § 1104(a)(1)(D). In this case, that meant paying James Riordan's welfare benefits to the last beneficiary designated by him to receive them: Irene Riordan, not Rosemary.

AFFIRMED.