LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,
Plaintiff,

v.

Barbara KENNEDY, et al., Defendants.

No. 1:01–CV–1113 TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 17, 2002.

H. Sanders Carter, Jr., Holli D. Hidden, Carter & Ansley, Atlanta, GA, for Plaintiff.

Joseph Lefkoff, Kimberly Ann Richardson, Lefkoff Duncan Grimes & Miller, Robert Leonard Rothman, Henry M. Perlowski, Arnall Golden & Gregory, Atlanta, GA, gor Defendants.

## ORDER

THRASH, District Judge.

This is an interpleader action initiated by Plaintiff Liberty Life Assurance Company of Boston to determine which persons are the proper beneficiaries of insurance pursuant to an ERISA employee welfare benefit plan. It is before the Court on Defendants Mary Beth Kennedy, Bridget Kennedy and Presley Kennedy Wilsons' (the "Mary Beth Kennedy Claimants") Motion for Summary Judgment [Doc. 22] and Defendants Barbara H. Kennedy, individually, and as the Trustee for The Katherine Elizabeth Kennedy and William Blakeley Kennedy Management Trusts' (the "Barbara Kennedy Claimants") Motion for Summary Judgment [Doc. 25]. For the reasons set forth below, the Court grants the Mary Beth Ken-

nedy Claimants' Motion for Summary Judgment and denies the Barbara Kennedy Claimants' Motion for Summary Judgment.

## I. BACKGROUND

This is an interpleader action initiated by Plaintiff Liberty Life Assurance Company of Boston ("Liberty Life") to determine which persons are the proper beneficiaries of life and accident insurance provided to Clint M. Kennedy ("Mr. Kennedy") pursuant to an employee welfare benefit plan ("the Plan") maintained by Georgia–Pacific Corporation ("Georgia–Pacific"). On the one hand, Defendant Barbara N. Kennedy, Mr. Kennedy's second wife, has asserted a claim to 50% of the interpleaded funds based on a beneficiary designation form executed by Mr. Kennedy on March 14, 1988, which names her as his sole beneficiary. (*See* Answer and Claim to Interpleader Funds filed by Defendants Barbara Kennedy, Katherine E. Kennedy and William B. Kennedy at 18–19; Barnard Dep. Ex. 17.) Barbara Kennedy also has asserted a claim to a portion of the funds on behalf of her children, Katherine and William Kennedy, pursuant to the Settlement Agreement incorporated into her Final Judgment and Decree of Divorce from Mr. Kennedy, entered on July 3, 1991. (See Consent Order ¶ 4 (submitted Nov. 9, 2001.))

On the other hand, the Mary Beth Kennedy Claimants have asserted a claim to the interpleaded funds based on Mr. Kennedy's Last Will and Testament ("the Will"), dated June 25, 1993. (See Defendants' Answers and Claim to Interpleader Funds at 28–33.) Pursuant to the Will, Defendant Mary Beth Kennedy, Mr. Kennedy's wife for the nine-plus years preceding his death, would receive 25% of the

interpleaded funds, and Mr. Kennedy's four children (Defendants Bridget Kennedy Richards, Presley Kennedy Wilson, Katherine Kennedy and William Kennedy) would each receive 18.75% of the interpleaded funds. (Wildau Dep. Ex. 38 ¶ 5.) [1]

### A. THE PARTIES

Defendant Mary Beth Kennedy was married to Mr. Kennedy from 1991 until the time of his death on October 7, 2000. (See Defendants' Answers and Objections to First Interrogatories ["Defs.' Resp. Interrogs."], ¶ 2.) On November 20, 2000, Mrs Kennedy was appointed as Executrix of the Estate by the Probate Court of Fulton County, Georgia. (*Id.*) Defendants Bridget Kennedy Richards and Presley Kennedy Wilson are the natural children borne out of Mr. Kennedy's first marriage. (Defs.' Resp. Interrogs., ¶ 2). Barbara Kennedy was married to Mr. Kennedy from 1983 to 1991. (B. Kennedy Dep. at 17; B. Kennedy Dep. Ex. 25.) Defendants Katherine and William Kennedy are the natural children borne out of Mr. Kennedy's marriage to Barbara Kennedy. (B. Kennedy Dep., Ex. 25, ¶ 3.) Barbara Kennedy also is the natural guardian of, and trustee for, Katherine and William Kennedy under The Katherine Elizabeth Kennedy and William Blakeley Kennedy Management Trust ("the Trust"). (B. Kennedy Dep. Ex. 29.)

### B. MR. KENNEDY'S PARTICIPATION IN THE PLAN

Mr. Kennedy was employed by Georgia–Pacific from August 23, 1973 to October 7, 2000. (Responses of Barbara Kennedy, Katherine E. Kennedy and William B. Kennedy ["Barbara Kennedy Claimants' Resp. Interrogs."], ¶ 7.) At the time of his

---

**1.** The parties have already agreed to distribute 37.5% of the remaining funds interpleaded into the Registry of Court to Barbara Kennedy, in trust for Katherine and William Kennedy. (See Consent Order, ¶ 6 (submitted Nov. 9, 2001)).

death, he was the Executive Vice President of the company. At all times relevant herein, Mr. Kennedy was a participant in the Plan, which provided life, executive personal accident and personal accident insurance for Georgia–Pacific's qualifying executives. (*Id.*) At the time of his death, this insurance totaled $1.3 million, the amount interpleaded into the Registry of Court by Liberty Life exclusive of interest. (*See* Compl., ¶¶ 30–31, 45.)

### 1. THE INITIAL BENEFICIARY DESIGNATION FORM

On March 14, 1988, Mr. Kennedy signed a "Designation of Beneficiary Form" for Georgia–Pacific's "Executive Life Insurance and Personal Accident Insurance Plans," which, at the time, were underwritten by Prudential Insurance Company of America. (*See* Barnard Dep., Ex. 17.) This form provided that Mr. Kennedy's beneficiary was: "Barbara N. Kennedy, if living, otherwise; Mary June Kennedy, if living, otherwise; my children living at my death." (*Id.*)

During the ensuing years, Mr. Kennedy allegedly received written confirmation from Georgia–Pacific that Barbara N. Kennedy remained the beneficiary of record of his life insurance benefits. On March 25, 1991, Georgia–Pacific sent an intracompany memorandum to him to confirm that Barbara N. Kennedy remained the beneficiary of record of his Georgia–Pacific Plan, but further advised him that the Special Beneficiary Designation Form was "the necessary form[s] to be completed in the event you wish to change your beneficiary designation" for the Plan. (G–P–00958–00961). Attached to the memo was a Special Beneficiary Designation Form. Mr. Kennedy never updated or changed the original Special Beneficiary Designation Form with Georgia–Pacific.

### 2. THE CHANGE IN BENEFICIARY DESIGNATION EFFECTUATED UPON MR. KENNEDY'S DIVORCE FROM BARBARA KENNEDY

On July 3, 1991, Barbara Kennedy and Mr. Kennedy were divorced. (B. Kennedy Dep., Ex. 25.) As part of the divorce, Barbara Kennedy prepared the Settlement Agreement that was incorporated into the Final Judgment and Decree of Divorce. (*See* B. Kennedy Dep. at 43.) With respect to Mr. Kennedy's employer-sponsored insurance, the Settlement Agreement provided as follows:

> In addition, the Husband hereby agrees to maintain his current life insurance program provided by his employer or such comparable insurance as may be provided by any future employer naming Wife as trustee for the parties' children as beneficiaries of 50% of the total death benefits provided by said insurance. Provided however that in the event the Husband remarries, he may reduce the amount of such insurance for each child to 18.75% of the total company-provided benefit.

(B. Kennedy Dep., Ex. 25, ¶ 3(g).)

Accordingly, both Mr. Kennedy and Barbara Kennedy contemplated that their children (Katherine and William Kennedy) would receive certain insurance benefits, subject to partial divestment upon Mr. Kennedy's sole election providing that he remarried. (*See id.*) The Settlement Agreement did not provide Barbara Kennedy with any portion of the insurance benefits and further released Mr. Kennedy from all other "actions, suits, debts, claims, demands and obligations" owed to Barbara Kennedy. (*See id.,* ¶¶ 3(g), 7 and 17.) Thus, the Settlement Agreement did not address how 50% to 62.5% of the Georgia–Pacific insurance would be distributed upon Mr. Kennedy's death, other than to

recognize that Mr. Kennedy's upcoming marriage to Mary Beth Kennedy likely would impact his choice of beneficiaries. (*See id.*, ¶¶ 3,7.) Despite executing the Settlement Agreement, Mr. Kennedy did not submit a new beneficiary designation form to Georgia–Pacific reflecting his agreement to name Katherine and William Kennedy as "beneficiaries" under the Plan. (*See* Barnard Dep. at 18.) Thus, it is undisputed that Mr. Kennedy intended that the 1988 Beneficiary Designation Form was to be superceded at least in part.

### 3. THE CHANGE IN BENEFICIARY DESIGNATION EFFECTUATED BY MR. KENNEDY'S WILL

In 1993, after marrying Mary Beth Kennedy two years earlier, Mr. Kennedy consulted with Robert P. Wildau, Esq., regarding the preparation of his will. (*See* Wildau Dep. at 9.) As confirmed in the notes and letters describing the initial drafts of the will, Mr. Kennedy clearly expressed his intent to leave 25% of his employer-sponsored insurance to Mary Beth Kennedy, his wife, and 18.75% of said benefits to each of his four children. (*See* Wildau Dep., Exs. 32–33, 37; *see also* Defs.' Resp. Interrogs., ¶ 6(a).) Furthermore, at no time during any of his conversations with Mr. Wildau did Mr. Kennedy ever express his intent to leave any of his employer-sponsored insurance to Barbara Kennedy, his second wife whom he had divorced. (*See* Wildau Dep. at 46; Wildau Dep., Exs. 32–33, 37–42.)

When evaluating Mr. Kennedy's goals, Mr. Wildau understood that the Settlement Agreement required Mr. Kennedy to leave no less than 18.75% of his insurance to Katherine and William Kennedy each "as beneficiaries." (Wildau Dep. at 23, 25, 47; *see* B. Kennedy Dep., Ex. 25, ¶ 3(g).) Not knowing the status of Mr. Kennedy's actual beneficiary designation form filed with Georgia–Pacific, Mr. Wildau was con-

cerned that Mr. Kennedy would violate the strict terms of the Settlement Agreement if he did not provide for Katherine and William Kennedy as "beneficiaries," even with the allocation of benefits provided to them in the draft will. (Wildau Dep. at 25, 37, 48.) In an attempt to comply with the exact language of the Settlement Agreement, Mr. Wildau initially recommended that Mr. Kennedy secure Barbara Kennedy's consent to the allocation of his insurance pursuant to his will. (Wildau Dep. at 31, 39) ("The necessity of Barbara's consent was in order to stay in compliance with the divorce agreement. He was of course legally free to change his beneficiary at any time.") Therefore, on June 22, 1993, Mr. Wildau forwarded a draft "consent" letter to Mr. Kennedy that he could then send to Barbara Kennedy. (Wildau Dep. at 38; *see* Wildau Dep., Ex. 41) ("Following up on our meeting of last week I enclose the letter I have drafted for your use in dealing with Barbara over the technical change in how your insurance obligation under the divorce is to be handled.")

Three days later, Mr. Kennedy contacted Mr. Wildau and advised him that he was going on vacation and needed to execute his will. (Wildau Dep. at 31.) Realizing that Mr. Kennedy had not secured Barbara Kennedy's consent to the allocation of his employer-sponsored insurance via his will, Mr. Wildau improvised and added language to Item Five of the draft will. (Wildau Dep. at 31, 32–33; *see* Wildau Dep, Ex. 40) The first part of the improvised language provided that "[a]ssuming the named beneficiary of said life insurance is my estate," the proceeds are to be distributed as follows: 25% to Mary Beth Kennedy and 18.75% to each of his four children, with the proceeds to Katherine and William Kennedy to be placed in trust. (*See* Wildau Dep, Ex. 40 at WIL0399). The second part of the impro-

vised language critically added the following clause to the end of Item Five of the draft will:

> If at the time of my death my estate is *not* the named beneficiary of all my employer-provided life insurance, then I hereby direct that the proceeds thereof be directed to the persons and in the manner hereinabove set forth insofar as the beneficiary designations on said insurance can be made consistent with the terms of this Will.

(Wildau Dep. at WIL0400) (Emphasis in original).

Explaining the overall purpose of the improvised language, Mr. Wildau testified that his intent in drafting the improvised language was to attempt to satisfy the technical language in paragraph 3(g) of the divorce agreement while accomplishing what Mr. Kennedy intended. He also testified that the intent of the language was not to address the situation of Mr. Kennedy not actually reaching an agreement with Barbara. (Wildau Dep. at 49, 50). While Mr. Wildau earlier advised Mr. Kennedy to change his beneficiary designations on file with Georgia–Pacific, Mr. Wildau testified that, based on his observations of his client, "the improvised solution contained in his Will may have given him [Mr. Kennedy] a sense that it was all taken care of..." (Wildau Dep. at 40.)

After receiving the benefit of Mr. Wildau's counsel, Mr. Kennedy executed his Last Will and Testament ("the Will") on June 25, 1993, which reflected his intent to leave his employer-sponsored insurance to Mary Beth Kennedy and each of his four children, to the exclusion of Barbara Kennedy. (Wildau Dep. at 49, 50–51; *see* Wildau Dep. Ex., 38, ¶ 5.) In final form, Item Five of the Will provides as follows:

> Assuming the named beneficiary of said life insurance is my estate, I hereby give and bequeath all the proceeds of life insurance provided to me by my employer to the following persons:
>
> (a) To my wife, Mary Beth Kennedy, one-fourth (25%) outright;
>
> (b) To each of the two (2) children of my first marriage, Bridget and Presley... three-sixteenths (18.75%) respectively;
>
> (c) To each of the two (2) children of my second marriage, Katherine and William...three-sixteenths (18.75%) respectively; provided however that if either of said children is less than thirty (30) years old at the time of my death his or her shares shall be distributed to their mother, Barbara Nowell Day Kennedy, to be held in separate trusts for said children respectively...

If at the time of my death my estate is *not* the named beneficiary of all my employer-provided life insurance, then I hereby direct that the proceeds thereof be directed to the persons and in the manner hereinabove set forth insofar as the beneficiary designations on said insurance can be made consistent with the terms of this Will.

(Wildau Dep., Ex. 38, ¶ 5) (Emphasis in original).

### 4. MR. KENNEDY'S LACK OF ACTION FOLLOWING THE EXECUTION OF THE WILL

At no time after June 25, 1993, did Mr. Kennedy execute a codicil to the Will, leaving the Will as his last writing, reflecting the intended beneficiaries of his employer-sponsored insurance. (*See* Defs.' Resp. Interrogs., ¶ 2; M. Kennedy Dep. at 32.) Mr. Kennedy also did not make any effort to amend his beneficiary designation form on record with Georgia–Pacific, (See Barnard Dep. at 18), leaving a conflict between the March 14, 1988 form, on the one hand, and the subsequently executed Set-

tlement Agreement and the Will, on the other hand. Lacking any attention to detail regarding financial matters, Mr. Kennedy also ignored a number of opportunities to complete a new Georgia–Pacific beneficiary designation form, (See Barnard Dep. at 23, 24–26; *see also* M. Kennedy Aff. ¶¶ 6–7; Wildau Dep. at 41.) Finally, although Mr. and Mary Beth Kennedy were engaged in contentious divorce proceedings in the late 1990s, they reconciled in the Spring of 2000. (M. Kennedy Dep. at 17–18, 32; *see* M. Kennedy Aff., ¶ 7.)

### 5. THE PLAN DOCUMENTS AND PLAN ADMINISTRATION

#### a. THE PRUDENTIAL SUMMARY PLAN DESCRIPTION

On March 11, 1988, shortly after becoming eligible to participate in the Plan, Georgia–Pacific provided Mr. Kennedy with a Georgia–Pacific Summary Plan Description booklet ("SPD"). The SPD distributed at that time was dated, effective January 1, 1987. Relevant to this litigation, the 1987 SPD provided in pertinent part as follows:

"NAMING YOUR BENEFICIARY

There is a special beneficiary designation form for this executive program. Your beneficiary is the person, estate, trust, organization, etc., which you designate as such on the form. Unless you have made an irrevocable assignment (see page 9), you can change your beneficiary at any time without the consent of your present beneficiary. To do so, contact the Employee Benefits Department for the correct forms."

Prior to Mr. Kennedy's death, Georgia–Pacific twice revised the SPD for the Plan. All three SPDs in effect while he participated in the Plan were produced by Georgia–Pacific. All three SPDs contain the exact language quoted above (except the page number changed regarding the irrevocable assignment).

In the January, 1995, revision of the "Executive Life and Personal Accident Program" summary plan description when discussing "Plan Administration," the Summary Plan Description provides that "[t]he Plan Administrator has full discretionary authority to administer and interpret this plan and the Board resolutions pertaining to this plan." The Summary Plan Description further provides that:

[i]f there is any conflict between this explanation of the provisions of the plans and the contracts covering the plans, the contracts will also govern. If you want to review the contract between Georgia–Pacific and The Prudential Insurance Company, or if you have any questions, please contact the Employee Benefits Department.

To the extent that Mr. Kennedy actually received the Summary Plan Description, he did not review or discuss the document at any time in the presence of his wife. (M. Kennedy Aff., ¶ 8.) Mr. Kennedy also did not keep copies of his Georgia–Pacific insurance records, including the Summary Plan Description, in his home at any time during his marriage to Mary Beth Kennedy. (M. Kennedy Aff. ¶ 8.)

#### b. THE SUBSEQUENT CHANGES TO THE PLAN

Sometime prior to 2000, Liberty Life became the insurance provider for the Plan, presumably replacing Prudential Insurance Company of America ("Prudential"). (Barnard Dep. at 35.) Despite the change in carriers, Georgia–Pacific did not issue a new summary plan description to its executive employees. (*See* Barnard Dep. at 20) Either with the change in carriers to Liberty Life or otherwise, Wausau Benefits, Inc. ("Wausau") was retained to administer the Plan, a function that included the processing of all claims under the Plan. (Barnard Dep. at 31, 33). When asked about the "Plan Administration" lan-

guage in the Summary Plan Description, Ms. Barnard responded, "Wausau is the administrator."

### c. *THE INSURANCE POLICIES*

The Insurance Policies issued by Liberty Life were in force at the time of Mr. Kennedy's death. (*See* Barbara Kennedy Claimants' Resp. Interrogs.,¶ 7; Ex. 1 to Compl.). In pertinent part, Section 3(B) of the "Benefits Provisions" portion of the Policies provides that "[a]n employee may name anyone as Beneficiary except the Plan Holder. More than one Beneficiary may be named." (Ex. 1 to Compl.,¶ 3(B)). Section 3(C) of the "Benefits Provisions" portion of the Policies provides:

**Change of Beneficiary.** An employee may change the Beneficiary. Any change requires acceptable written notice to the Policyholder. The notice can be on forms approved by the Policyholder. The change shall be filed with the Company and will take effect from the date the employee signed the notice. If the notice is not signed, it will be void. The employee does not have to be living at the time of such filing.

(*Id.,* ¶ 3(C)).

### C. *THE COMPETING CLAIMS AND CONCLUSION REACHED BY WASAU*

#### 1. *THE DOCUMENTS INITIALLY REVIEWED BY GEORGIA-PA-CIFIC*

Shortly after Mr. Kennedy's sudden and accidental death, Georgia–Pacific examined its file and determined that the only beneficiary designation form on record was the form executed by Mr. Kennedy on March 14, 1988, a form that referenced insurance underwritten by Prudential. (*See* Barnard Dep., Ex. 17; Barnard Dep. at 11, 18.) Based on this examination only, Georgia–Pacific prepared a series of documents that referred to Barbara Kennedy as the sole beneficiary of Mr. Kennedy's insur-

ance provided by the Plan. (*See* Barnard Dep. Exs. 6, 10 and 21; Exs. 8–10 to Compl.). When these documents were generated, however, Georgia–Pacific did not have copies of the Settlement Agreement or the Will, (Barnard Dep. at 39), each of which was executed years after the March 14, 1988 form.

#### 2. *THE ADDITIONAL INVESTIGATION AND THE CONCLUSION REACHED BY WASAU*

In late October, 2000, counsel for the Defendants first contacted Georgia–Pacific regarding the available insurance maintained on Mr. Kennedy's life. (Barnard Dep., Ex. 20). Approximately one month later, counsel for the Defendants advised Georgia–Pacific that the beneficiary designations contained in the Settlement Agreement and the Will differed from the designation set forth in the March 14, 1988 form. (*See* Barnard Dep. at 14–15.) Upon learning of the potential conflict, and prior to recommending payment of the claim asserted by Barbara Kennedy, Georgia–Pacific referred the matter to Wausau. (Barnard Dep. at 17–18, 41.)

Georgia–Pacific and Wasau then exchanged a series of e-mails on November 29, 2000, wherein Wausau, in its capacity as administrator of the Plan, advised that "the policy allows a beneficiary designation (i.e. a will) made known to us after the death of the insured." (Barnard Dep., Ex. 15.) With the conclusion reached by Wausau, Georgia–Pacific advised counsel for the Defendants that:

We have spoken to Wausau on the issue you inquired about several days ago. We were informed that the life insurance policy does allow a beneficiary designation (i.e. a will) made known to them after the death of the insured. Wausau has also indicated that they would need

a copy of the will and the divorce decree documents.

.    .    .    .    .

We have not yet made any payments on these life insurance policies so you will not have to undo anything that has already been done at this time.

(Barnard Dep., Ex. 14.)

### 3. THE COMPETING CLAIMS AND INSTANT LAWSUIT

After this, the Mary Beth Kennedy Claimants submitted their claim to Wausau, predicated on the beneficiary designation language contained in the Will, as reinforced by the language contained in the Settlement Agreement. (Defs.' Resp. Interrogs., ¶ 2). On January 29, 2001, by consent of all parties, Barbara Kennedy became the Trustee of thirty-seven and one-half percent (37.5%) of the Company insurance proceeds on behalf of Katherine and William Kennedy, (B. Kennedy Dep., Ex. 29 at 1), the amount of insurance contemplated by paragraph 3(g) of the Settlement Agreement, following partial divestment, and the amount specifically provided to Katherine and William Kennedy in the Will. (*See* B. Kennedy Dep., Ex. 25, ¶ 3(g); Wildau Dep., Ex. 38, ¶ 5.)

On the other hand, the Barbara Kennedy Claimants contend that the Will cannot operate to change the beneficiary designation set forth in the March 14, 1998, Special Beneficiary Designation Form or divest any portion of the fifty percent (50%) allocation provided to Katherine and William Kennedy in the Settlement Agreement even with the specific divestment language therein. (*See* Barbara Kennedy Claimants' Resp. Interrogs., ¶ 7). The Barbara Kennedy Claimants further seek the entirety of the proceeds provided by the Plan Policies, to the exclusion of all others, the children of Mr. Kennedy's first marriage and Mary Beth Kennedy, his wife. Having received competing claims to the proceeds, Liberty Life initiated this interpleader action on or about April 30, 2001, to avoid the possibility of multiple liability. (*See* Compl., ¶ 44).

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v, Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. DISCUSSION

### A. STANDARD OF REVIEW

The threshold issue to be decided in this ERISA case is the proper standard of review to be applied by the Court to the benefits determination made by the Plan Administrator. Generally, a reviewing court should apply a *de novo* standard of review. However, if the plan fiduciary or administrator is given authority to interpret plan documents, then the interpretation must be reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133

(11th Cir.2001). In the instant case, the Barbara Kennedy Claimants first contend that Wausau was not the administrator of the Plan, but instead Georgia–Pacific was the designated administrator. The Barbara Kennedy Claimants argue that Georgia–Pacific factually administered the Plan by creating and supplying its employees Special Beneficiary Designation Forms. In addition, Georgia–Pacific made the determination that Barbara Kennedy was the beneficiary of the Plan benefits based upon its Plan documents. (Barnard Dep., Ex. 6.) Furthermore, Georgia–Pacific completed Wausau Proof of Death Forms for Barbara Kennedy to submit to Wausau for payment. (Compl., Exs. 8, 9 and 10.) This argument is without merit. Georgia–Pacific's Executive Vice President of Human Resources, Patricia Barnard ("Ms.Barnard"), when asked about the administration of the Plan in her deposition unequivocally responded that "Wausau is the administrator." (Barnard Dep. at 31, 33; *see also*, Barnard Dep. at 15, 17–18, 41). In addition, as the employer of Plan participants, Georgia–Pacific clearly has to submit forms to Wausau to begin the process of having benefits paid to beneficiaries. Wausau, with its offices in Wisconsin, does not monitor whether any Plan participants have passed away in Atlanta. As soon as Georgia–Pacific gathers basic information in its role as employer, however, it gets "out of the picture" and turns the matter over to Wausau for processing and payment, and, if necessary, for any interpretation of Plan documents. (*See* Barnard Dep., Ex. 15.) Thus, Wausau is the administrator.

■ Secondly, the Barbara Kennedy Claimants contend that Wausau, as administrator, did not interpret any part of the Plan and, thus, an arbitrary and capricious standard cannot be applied. The evidence of record is only that Georgia–Pacific made an inquiry of Wausau. Wausau then, on a hypothetical basis and without

the benefit of the Plan documents or Will at issue, stated that the policy does allow for a beneficiary designation (i.e., a will) made known to them after the death of the insured. (Barnard Dep., Ex. 14.) Wausau requested a copy of the Will and Divorce Decree documents and stated that "Wausau's Legal Dept will review these documents along with the most recent applicable Beneficiary Designation form to determine how the claim should be processed." (Barnard Dep., Ex. 15.) Faced with competing claims, the Plan benefits were interplead into Court. There is no evidence that Wausau interpreted the Plan or determined how the claim should be paid or exercised any alleged discretionary authority. Where a Plan Administrator is granted discretionary authority, but simply pays the disputed funds into the court in an interpleader action the Court must interpret the plan provisions *de novo*. *National Auto. Dealers & Assocs. Ret. Trust v. Arbeitman*, 89 F.3d 496, 498 (8th Cir.1996). Thus, I will apply a *de novo* standard of review.

## B. THE SUMMARY PLAN DESCRIPTION CONFLICTS WITH THE PLAN POLICIES

■ The ERISA statute requires summary plan descriptions to contain information regarding plan administration, claims submission procedures, the source of financing and the identity of the organization through which the benefits are provided. 29 U.S.C. § 1022(b). If a purported plan document does not contain all or substantially all of the statutory and regulatory requirements, it is not an actual "summary plan description" within the meaning of ERISA and has no application in the construction of an ERISA plan. *Alday v. Container Corporation of America*, 906 F.2d 660, 665–666 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). I will assume without

deciding that the Georgia–Pacific SPDs comply with the statutory requirements in spite of the fact that they were not changed to reflect the switch from Prudential to Liberty.

■ The next issue then is whether there is a direct conflict between the Summary Plan Description and the operative language in Section 3(C) of the Plan Policies. Under well-established ERISA law, language contained in a plan insurance policy may be questioned only if a "direct conflict" exists with affirmative language appearing in a valid summary plan description. *Mers v. Marriott Int'l Group Accidental Death Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir.1998). Absent a direct conflict, the plan insurance policy controls as the contract setting forth all terms of the plan. In this case, there appears to be a direct conflict between the Plan and the Summary Plan Description as to the appropriate method for changing beneficiary designation. Although the Summary Plan Description does not specifically state that the "special beneficiary designation form" excludes all other means of communication, in my opinion there is enough ambiguity between the Summary Plan Description and the Plan as to the appropriate method for beneficiary designation to create a conflict.

■ If the Summary Plan Description and the Plan conflict, the Eleventh Circuit has clearly stated that the Summary Plan Description should govern. *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566 (11th Cir.1985). However, the Eleventh Circuit also holds that "a beneficiary must show reliance on the terms of the summary [plan description]" to the participant's detriment before actual policy language may be overridden. *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1578–79 (11th Cir.1992) (citing *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985)). Absent reliance and det-

riment to the participant, the plan should be administered according to the policy itself, which provides the full terms of the plan. *Branch*, 955 F.2d at 1579–80 (enforcing the policy language because "[t]here is no evidence that Bell ever read or relied on the summary. Rather Bell's conduct revealed absolute apathy...").

■ The only evidence in the record demonstrates that Mr. Kennedy did not even consider, much less, rely on the Summary Plan Description, assuming that he even saw the document at any time from January, 1995, to October 7, 2000. In this regard, Mr. Wildau specifically drafted Item Five of the Will in a manner that allowed Mr. Kennedy to avoid having to change his beneficiary designation of record. (See Wildau Dep., Exs. 38, 40; Wildau Dep. at 40, 49–50.) With the language in Item Five of the Will, Mr. Kennedy concluded that he did not need to do anything further to leave his insurance to his current wife and all of his children. (See Wildau Dep., Ex., 38 ¶ 5; Wildau Dep. at 40.) Moreover, Mr. Kennedy's consistent course of conduct, as best explained by Mary Beth Kennedy, the person to whom he was married during the period from January, 1995, to October 7, 2000, shows that he: (1) paid virtually no attention to financial detail; (2) did not keep copies of his insurance documents; and (3) would have set aside the Summary Plan Description upon receipt without reading it, assuming that he received it. (M. Kennedy Aff., ¶¶ 6–8.) Accordingly, I cannot find that Mr. Kennedy read the Summary Plan Description and relied on it to understand that it legally limited the means by which he could change his beneficiaries. Indeed, the very idea of reliance by Mr. Kennedy is contradicted by the undisputed evidence that on two occasions (the divorce Settlement Agreement and the Will), Mr. Kennedy changed the beneficiaries of his in-

surance without using the form required by the SPD. Thus, the Plan insurance policies must govern the beneficiary designation.

### C. SECTION 3(C) OF THE PLAN POLICIES

■ An examination of beneficiary provisions contained in the Plan insurance policies demonstrates that the Will may serve as Mr. Kennedy's beneficiary designation. First, the Plan policies do not restrict the choice of beneficiaries other than to preclude the naming of the Plan Holder. (*See* Compl. Ex. 1 ¶ 3(B).) Second, once a beneficiary designation form is submitted, a participant freely "may change the Beneficiary." (*See* Compl., Ex. 1, ¶ 3(C).) Moreover, the "acceptable written notice" of the change:

> . . . can be on forms approved by the Policyholder. The change shall be filed with the Company and will take effect from the date the employee signed the notice. If the notice is not signed, it will be void.
>
> The employee does not have to be living at the time of such filing.

(*See* Compl., Ex. 1, ¶ 3(C).)

■ When construing plan language like Section 3(C), ERISA instructs plan administrators and reviewing courts "to enforce strictly the terms of the plans." 29 U.S.C. § 1104(a)(1)(D). "In circumstances where a plan provides liberal mechanisms for changing beneficiaries (as in this case), 'strict' enforcement means allowing participants to do exactly that." *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir.1997). If plan documents make beneficiary changes "easy to do," the spirit of the plan documents must be followed. *Id.*

Applying these principles of construction, the language of the Plan provides that beneficiary changes "can be on forms approved by the Policyholder." (Compl., Ex. 1, ¶ 3(C).) By using a liberal term like "can" the Plan clearly contemplates that beneficiary designations may be accomplished through documents other than "forms approved by the Policyholder." (*See id.*) Furthermore, by stating that "[t]he employee does not have to be living at the time of such filing," the Plan clearly contemplates that documents typically submitted after death, i.e. wills, can change existing beneficiary designations retroactive to the date of execution. (*See id.*)

Accordingly, the liberal change in beneficiary language contained in the Plan policies demands a finding that "a will" is an acceptable "beneficiary designation" under the Plan. (*See e.g.*, Barnard Dep., Exs. 14–15). The Will, therefore, controls the distribution of the interpleaded funds because it is Mr. Kennedy's last beneficiary designation of record, having been executed nearly two years after the Settlement Agreement and over five years after the March 14, 1988, form. Regardless of what Mr. Kennedy may have said at any given point in time after June 25, 1993, he took no affirmative action to amend the Will or submit a new beneficiary designation form changing the allocation of his employer-sponsored insurance provided in Item Five of the Will.

Also, the Will does not impair any vested rights created by the Settlement Agreement executed nearly two years earlier because it allocates 18.75% of the total insurance benefits each to Katherine and William Kennedy. (*Cf.* Wildau Dep. Ex. 38, ¶ 5 *with* Wildau Dep., Ex. 25, ¶ 3(g).) To the extent the Settlement Agreement is a valid qualified domestic relations order and provides a source of rights to Katherine and William Kennedy independent from the Plan Policies, the Will is completely consistent with the Settlement Agreement. *See e.g., Altobelli v. International Bus. Mach. Corp.*, 77 F.3d 78, 81–82

(4th Cir.1996) (holding that qualified domestic relations orders are enforceable under ERISA and that divorce decrees may support the waiver of rights under ERISA). Thus, I give full effect to the terms of the Will as it reflects Mr. Kennedy's consistent expression of his intent to leave his insurance benefits to his ·wife, Mary Beth Kennedy, and each of his four children. (*See* B. Kennedy Dep., Exs. 25, 32–33, 37–42; M. Kennedy Aff., ¶¶ 4–5; Wildau Dep. at 46, 49, 50.)

■ Finally, the Barbara Kennedy Claimants assert that a purported change of beneficiary by will is preempted by ERISA. ERISA's preemption section, 29 U.S.C. § 1144(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan covered by ERISA. A state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff,* 532 U.S. 141, 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). The Barbara Kennedy Claimants argue that a will purporting to designate the beneficiary of group life insurance benefits is preempted by ERISA because Georgia testamentary law would be used to designate ERISA benefits. I find that this argument lacks merit.

ERISA's preemption statute is designed to address an area of core ERISA concern. ERISA commands that a plan shall specify the basis on which payments are made to and from the plan and that the fiduciary shall administer the plan in accordance with the documents and instruments governing the plan, making payments to a beneficiary who is designated by a participant or by terms of the plan. *Id.* at 147, 121 S.Ct. 1322. In the instant case, as discussed above, the Plan insurance policies allow for alternative documents to serve as beneficiary designations. A will is, thus, an acceptable beneficiary designation. In this case, by allowing the Will to serve as a proper beneficiary designation, ERISA is not being preempted by state testamentary law. I am simply enforcing the provisions of the Plan.

## IV. CONCLUSION

For the reasons set forth above, the Barbara Kennedy Claimants' Motion for Summary Judgment [Doc. 25] is DENIED and the Mary Beth Kennedy Claimants' Motion for Summary Judgment [Doc. 22] is GRANTED. The Clerk is directed to enter a judgment awarding 25% of the interpleaded funds to Defendant Mary Beth Kennedy, 18.75% of the funds to Defendant Bridget Kennedy Richards, and 18.75% of the funds to Defendant Presley Kennedy Wilson with interest and costs against the Barbara N. Kennedy Defendants.