**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Devin Lanier WADDELL; Devin Lanier Waddell, as Administrator of the Estate of Lanier Gene Waddell; Ann Marshall Waddell; Anne Marie Bishop, as Conservator for Ann Marshall Waddell; Defendants.**

**CIVIL ACTION NO. 2:15-CV-43-WCO**

United States District Court, N.D. Georgia, Gainesville Division.

Signed July 5, 2016

Filed July 6, 2016

Clyde Young Morris, Jr., Clyde Y. Morris, LLC, Gainesville, GA, Heather K.

Karrh, Rogers & Hofrichter & Karrh, LLC, Fayetteville, GA, for Defendants.

## ORDER

WILLIAM C. O'KELLEY, Senior United States District Judge

The captioned case is before the court for consideration of motions for summary judgment filed by defendants Ann Marshall Waddell ("Ann Waddell") and Anne Marie Bishop ("Anne Bishop") (together "Mrs. Waddell") [39, 40] and a motion for summary judgment filed by defendant Devin Lanier Waddell ("Devin Waddell") [41].

### I. Facts

Lanier Gene Waddell ("Lanier Waddell") was married to Ann Waddell prior to his death on December 23, 2013. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 1.) On or about April 30, 2003, Ann Waddell was involved in an accident that caused her a permanent traumatic brain injury. (Tharpe Decl. ¶ 3.) Defendant Anne Bishop is her conservator. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 3.) Until October of 2013, Lanier Waddell was Ann Waddell's conservator.[1] (Devin Waddell's Statement of Undisputed Material Facts ¶ 8.) Defendant Devin Waddell is Lanier Waddell's son and Ann Waddell's stepson. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 4.) Devin Waddell is the administrator of Lanier Waddell's estate (the "Estate"). (Devin Waddell's Statement of Undisputed Material Facts ¶ 3.)

---

1. In 2009, Ann Waddell's daughters, Jennifer Johnston and Deborah Mott, filed a petition in Hall County Probate Court to have Lanier Waddell removed as Ann Waddell's guardian/conservator. Lanier Waddell eventually agreed to resign as conservator and, in conjunction with that, deeded a one-half undivided interest in the house he owned to a Third-Party Special Needs Trust for Ann Waddell's life and then to her daughters Jennifer and Deborah as remaindermen. (Tharpe Decl. ¶ 9.)

Lanier Waddell obtained life insurance through his employment with Alcatel-Lucent USA, Incorporated ("Alcatel"). (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 5.) Metropolitan Life Insurance Company ("MetLife") underwrote the policies involved in this interpleader action. (*Id.* at ¶ 6.) According to MetLife, Lanier Waddell was insured under two policies, the Alcatel-Lucent Group Life Insurance Plan for Retired Employees (the "Basic Policy") and the Alcatel-Lucent Group Term Life Insurance Plan (the "Term Policy"). (*Id.* at ¶ 7.) Each policy is worth $60,000. (*Id.* at ¶ 8.) With regard to both policies, the Summary Plan Description (the "SPD") provides that "after your retirement, the beneficiary(ies) for your basic life insurance coverage and/or group universal life insurance coverage are the same as those designated while you were actively employed." (*Id.* at ¶ 9.)

On October 12, 1983, Lanier Waddell designated Ann Waddell as the beneficiary of the Basic Policy. (*Id.* at ¶ 10.) At the time of his death, there was no beneficiary on file under the Term Policy. (*Id.* at ¶ 11.) In this regard, the SPD states:

> If ... you did not designate a beneficiary, payment will be made to your next surviving relative(s) and considered in this order:
>
> ● your spouse or domestic partner,
>
> ● your children,
>
> ● your parents,
>
> ● your brother and sister.
>
> Notwithstanding the foregoing, the insurer may pay all or part of such amount to your estate.

(*Id.* at ¶ 12.) In addition, the Term Policy states:

> If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to one or more of the following persons who are related to you and who survive you:
>
> (a) Spouse;
>
> (b) child(ren);
>
> (c) parents;
>
> (d) sibling(s) or your estate if there is no surviving sibling.
>
> However, we may instead pay all or part of that amount to your estate.

(*Id.* at ¶ 13.)

On December 23, 2013, Lanier Waddell died suddenly and unexpectedly of a heart attack. (Devin Waddell's Statement of Undisputed Material Facts ¶ 21.) On January 10, 2014, Devin Waddell called MetLife and stated that Lanier Waddell had died and that he believed Lanier Waddell had sent change of beneficiary forms for his life insurance policies. (Devin Waddell Decl. ¶ 2.) Regarding this call, MetLife's claims file states: "[Devin Waddell] said there is a conservator for the bene. She is incapacitated. He said there was a change of bene form sent to the ER. Told him I do not see that. Gave him the recordkeeper # to call and verify bene." (Mrs. Waddell's Mot. for Summ. J. Ex. 1, 119.) Upon learning that Ann Waddell was incapacitated and had a conservator, MetLife sent the forms to Anne Bishop to complete in order for MetLife to pay benefits. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 18.)

In a letter dated March 19, 2014, MetLife informed Clyde Y. Morris ("Morris"), Devin Waddell's attorney, that "neither [Devin Waddell] nor the Estate are named beneficiary of the Basic [Policy] coverage [and that the Term Policy] is payable per facility of payment." (Mrs. Waddell's Mot.

for Summ. J. Ex. 1, 204.) On March 26, 2014, in a letter to MetLife, Morris wrote, among other things:

> My letter of March 18, 2014, informed you that my client is the legally authorized Attorney-in-Fact for Ann Marshall Waddell, an incapacitated adult, and requested copies of various documents regarding two MetLife group life policies owned by her now-deceased husband, Lanier Gene Waddell. Yesterday I received your reply dated March 19 ignoring the POA and declining my request.... This letter will serve as a demand on behalf of Devin L. Waddell, Administrator of the Estate of Lanier Gene Waddell, that payment of all policy benefits be made to the Estate of Lanier Gene Waddell. This letter will also serve to put MetLife on notice that failure to pay the policy benefits to the estate may have severe legal consequences and will be considered grounds for legal action and damages against MetLife. In addition, I am renewing my request for the information and documents previously requested, on the grounds that my client, Devin L. Waddell, is the legally authorized Attorney-in-Fact for Ann Marshall Waddell, an incapacitated adult.

(*Id.* at 205.)

In a letter dated April 3, 2014, MetLife informed Morris:

> We are in receipt of the completed Claimant's Affidavit and your client's completed Claimant's Statement regarding the above referenced claims.
>
> The Basic [Policy] is an employee welfare benefit plan regulated by [ERISA]. MetLife, as claims fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the [Policy]. ERISA defines beneficiary as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).
>
> As the Claim's fiduciary for the [Term Policy], MetLife is required to review and process the claim in accordance with the documents and instruments governing the [Policy].
>
> . . . .
>
> The decedent completed a beneficiary designation form dated May 22, 1981 for the [Basic Policy] benefits. However, this beneficiary form does not name your client, as an individual nor as the estate representative of Lanier Waddell as the beneficiary of record.
>
> Additionally, the decedent did not designate a beneficiary on file with the policy for the [Term Policy] benefits. Where there is no eligible, designated beneficiary on file with the policy, benefits are paid in accordance with the line of succession provision in the policy.
>
> According to our records, your client is not the named beneficiary for the [Basic Policy] or the first in line for the [Term Policy]. Also, please be advised, the Estate of Lanier Waddell is not payable on either of these claims.
>
> Therefore, based on the record before MetLife, we must deny your client's claims as both an individual and as the representative of the Estate of Lanier Waddell.
>
> Under ERISA for the [Basic Policy], you have the right to appeal this decision within sixty (60) days after the receipt of this letter. To do so, you must submit a written request for appeal to MetLife at P. O. Box 6100, Scranton, PA

18505. Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate to enable MetLife to give your appeal proper consideration. Upon your written request, MetLife will provide you with a copy of the records and/or reports that are relevant to your claim.

MetLife Group Life Claim Appeal Committee will carefully evaluate all the information and advise the claimant of its decision within sixty (60) days after the receipt of the appeal.... In the event the appeal is denied in whole or in part, the claimant has the right to bring a civil action under Section 502(a) of ERISA.

For the [Term Policy] which is non ERISA coverage, you may request a review of this decision within sixty (60) days after the date of this letter. To do so, you must submit a written request for appeal to MetLife at P.O. Box 6100, Scranton, PA 18505. Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you believe will enable MetLife to give your claim appropriate consideration.

(*Id.* at 209-11.)

In a letter dated April 29, 2014, Morris asserted that Devin Waddell was the beneficiary and enclosed copies of both beneficiary designation forms (the "Forms") to MetLife. Both Forms designated Devin Waddell as the 100% beneficiary and purportedly were signed by Lanier Waddell

on December 12, 2013, eleven days before he died. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 22.) In his letter, Morris argued that it was of no consequence that Lanier Waddell was not alive when MetLife received the designation forms months after his death. (*Id.* at ¶ 26.)

The SPD explains that in order to change a beneficiary the insured must:

contact the insurer ... for the appropriate form. After you complete the form, return it to the insurer. Your change takes effect on the date you sign the form, even if you are not alive when the insurer receives it.

(Mrs. Waddell's Mot. for Summ. J. Ex. 2, 7.) The Basic Policy and the Term Policy contain the following identical language, which is also in accord with the SPD:

You may change the Beneficiary at any time by filing a new form with us. You do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date you signed it. The change of Beneficiary will take effect even if you are not alive when it is received.

(Mrs. Waddell's Statement of Undisputed Material Facts ¶ 25.) According to MetLife's email record dated May 5, 2014, in response to whether the Forms were on file, Tammi Wurz, MetLife's Group Life Examiner, wrote: "I just checked [MetLife's] imaging again & did not find the [Forms]—there is no notation on vantage (GUL system) either." (Mrs. Waddell's Mot. for Summ. J. Ex. 1, 220.)

In a letter dated May 8, 2014,[2] MetLife informed Morris, among other things:

This is in response to your request for a review of the denial of the referenced

2. Although the letter is actually dated March 8, 2014, the parties do not dispute that this

claim, in accordance with ERISA. We have re-examined the entire claim file, including examination of any additional material and information provided with your request for appeal. For the reasons detailed below, we must uphold the denial of this claim.

. . . . .

According to our records, your client is not the named beneficiary for the [Basic Policy] or the first in line for the [Term Policy]. Also, please be advised, the Estate of Lanier Waddell is not payable on either of these claims. As such, your client's claim was denied on April 3, 2014. You believe that your client should be payable based on a beneficiary designation form dated December 12, 2013. You contend per the plan provisions the designation should be acceptable as it is now received. This designation was not on file with the firm as required and therefore is not a valid designation. If the insured employee or retiree provides or sends the designation it would be accepted if received. In this instance it is not the insured participant who is sending the beneficiary designation. It is being provided by another party, you, post death. The intent of such a provision is for when an insured sends or mails such a designation and while in transit their death occurs. That is not the case here and the provision you are relying upon does not apply.

Therefore, based on the record before MetLife, we must uphold the denial of your client's claims as both an individual and as the representative of the Estate of Lanier Waddell.

You are entitled to receive, upon request and free of charge, reasonable access to,

and copies of, all documents, records, and other information relevant to the claim for benefits. You have the right to bring a civil action under Section 502(a) of ERISA.

(*Id.* at 228-30.)

After this date, MetLife attempted to provide Ann Waddell with the benefits. (*Id.* at 237-41.) Ultimately, MetLife was not able to complete its attempt to pay the benefits to Ann Waddell due to the fact that Devin Waddell filed a temporary restraining order preventing payment of benefits and a lawsuit in Hall County seeking an award of benefits to the Estate. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 32.) That case was removed by MetLife and dismissed by Devin Waddell so that MetLife could file the present interpleader action. (*Id.* at ¶ 33.)

**II. Legal Analysis**

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C)(2). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■■■ It is well settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *See, e.g., Samples v. City of Atlanta,* 846 F.2d 1328,

letter was written after the May 7, 2014 decision to uphold the denial reflected in Met-

Life's records. (Mrs. Waddell's Mot. for Summ. J. Ex. 1, 227.)

1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The materiality of facts is governed by the relevant substantive law in the case. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party. The non-moving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). "If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999) (citation omitted).

 In their summary judgment motion, Ann Waddell and Anne Bishop assert that because MetLife's decision to award benefits to Ann Waddell is correct and reasonable, they should be granted summary judgment and the benefits should be paid into Ann Waddell's special needs trust. In his motion for summary judgment, Devin Waddell asserts that once MetLife received the Forms, the plain and unambiguous wording of both policies made Devin Waddell the beneficiary of the policy benefits effective December 12, 2013. With respect to the standard of review to be applied to MetLife's decision, Devin Waddell argues that the court should apply the *de novo* standard while Mrs. Waddell argues that ERISA analysis should be applied. Under the ERISA analysis, the courts in the Eleventh Circuit have adopted the following test for reviewing an administrator's determination:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

*Lee v. BellSouth Telecomms., Inc.*, 318 Fed.Appx. 829, 835–36 (11th Cir.2009).

According to MetLife, the Basic Policy is governed by ERISA. (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 34.) The Basic Policy document states that "this plan is intended to constitute an 'employee welfare benefit plan' as defined by ... the Employee Retirement Income Security Act." (Mrs. Waddell's Mot. for Summ. J. Ex. 4, 1.) Likewise, the Term Policy document states that "this plan is intended to constitute an 'employee welfare benefit plan' as defined in Section 3(1) of ERISA." (Compl., Ex. 20, 118.) The court finds that both policies are governed by ERISA.

 "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The *de novo* review standard does not apply where a plan contains "express language 'unambiguous in its design' [giving] the Administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir.1994). Here, the SPD that applies to both policies contains clear discretionary language. More specifically, the SPD provides: "The Plan Administrator may allocate or delegate its responsibilities for the administration of the plan to others and employ others to carry out or render advice with respect to its responsibilities under each of the Life Insurance Plans, including the discretionary authority to interpret and construe the terms of the Life Insurance Plans, to direct disbursements, and to determine eligibility for Life Insurance Plan benefits. The Plan Administrator has delegated its responsibility ...." (Mrs. Waddell's Mot. for Summ. J. Ex. 2, 36-37.) The Eleventh Circuit has held that discretion contained in an SPD is valid discretion. *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1138–39 (11th Cir.2001).

In addition, the policy documents contain clear discretionary language. Articles 6.4 and 6.5 of the Basic Policy state:

In addition to any implied powers and duties that may be needed to carry out the provisions of the Plan, the Plan Administrator shall have the following specific discretionary powers, duties and authorities with respect to the Plan:

(a) To make and enforce such rules and regulations as it shall deem necessary or proper for the efficient administration of the Plan;

(b) To determine questions relating to the eligibility of individuals to participate in the Plan and payment of benefits hereunder, in accordance with the terms of the documents or instruments governing the Plan; and

(c) To employ attorneys, accountants, actuaries, and other consultants and clerical personnel as it deems necessary and appropriate to carry out its duties and responsibilities under the Plan.

. . . .

The Plan Administrator has the discretion to delegate to any other person or persons (including, but not limited to, the Insurance Company) authority to act on behalf of the Plan Administrator, including, but not limited to, the authority to make any determination or to sign checks or other instruments incidental to the operation of the Plan for which the Plan Administrator is responsible.

(Compl. Ex. 20, 13.)

The Term Policy also contains virtually identical provisions. (*Id.* at 126–27.) Fur-

thermore, the Term Policy states that the proof required is "written evidence satisfactory to [the Plan Administrator] that a person has satisfied the conditions and requirements for any benefit described in this Certificate including the payment of Insurance." (Mrs. Waddell's Statement of Undisputed Material Facts ¶ 40.) "The Eleventh Circuit has held provisions requiring satisfactory proof of loss sufficient to confer discretion to the administrator, because the most reasonable interpretation of such a provision is that the proof must be satisfactory to the policy administrator." *Smith v. Continental Cas. Co.*, 616 F.Supp.2d 1286 (N.D.Ga.2007). *See also Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227 (11th Cir.2006) (finding that a policy that required insured to "submit satisfactory proof of Total Disability" conferred discretion to the policy administrator). Because of the discretionary authority given to the administrator, the *de novo* review standard does not apply here.

The court notes that in an interpleader action, the *de novo* standard usually is applied regardless of the presence of discretion in the plan because the insurer has not made a decision that may be reviewed and has simply paid the funds into the court without having exercised discretionary authority. *See Liberty Life Assur. Co. of Boston v. Kennedy*, 228 F.Supp.2d 1367, 1376 (N.D.Ga.2002). Here, however, Met-

Life reviewed a claim for benefits from Devin Waddell, denied it, and then denied it again on appeal. MetLife's denial letters explaining its reasons for the decision indicate that it interpreted provisions of its policies in making these decisions. MetLife made its decision to pay the benefits to Ann Waddell and attempted to do so. This is not a case where a plan administrator simply paid the disputed funds into the court in an interpleader action. *See Alliant TechSystems, Inc. v. Marks*, 465 F.3d 864, 869 (8th Cir.2006) (holding that on issues on which an administrator has rendered a decision and there was an exercise of discretion, the standard for judicial review is abuse of discretion even in cases where an interpleader is later filed).

▪ Devin Waddell then argues that this case should be reviewed *de novo* because of "procedural deficiencies" in the administrative process. Even assuming that such procedural deficiencies require a *de novo* review,[3] the court finds that the record in this case does not support Devin Waddell's assertion that MetLife erred in applying the procedure. As set forth in detail above, MetLife appears to have complied with ERISA provisions, and Devin Waddell underwent a complete ERISA administrative process. In fact, MetLife's initial denial letter to Devin Waddell tracked the requirements of ERISA regu-

---

3. In *Acree v. Hartford Life and Accident Ins. Co.*, 917 F.Supp.2d 1296 (M.D.Ga.2013), which Devin Waddell cites, the court held: "While there is no clear guidance on the issue, *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189 (11th Cir.2010), seems to suggest that an error in the procedure required under ERISA should be reviewed *de novo*" *Id.* at 1305. In *Capone*, however, the court held that the denial of benefits without a proper investigation pursuant to ERISA was *de novo* wrong and remanded the case for further consideration. *Capone*, 592 F.3d 1189, 1199–1200. With re-

spect to the standard of review, the *Capone* court expressly noted: "As our circuit's ERISA standard of review incorporates the *de novo* inquiry as the first step in the arbitrary and capricious standard, it is unnecessary for us to go beyond a *de novo* review at this time." *Id.* at 1196. Furthermore, the *Acree* court did not actually apply the *de novo* standard of review but rather remanded the case. Accordingly, the court is not persuaded that the *Capone* court's holding suggests application of a *de novo* review rather than the multi-step ERISA review.

lations. The letter provided Devin Waddell 60 days to appeal the decision in writing and instructed him to submit the reasons why he believed the claim was improperly denied and to submit any additional documents relating to his claim that he deemed appropriate. In response to Devin Waddell's appeal, MetLife again denied his claims, explaining that it had "re-examined the entire file including examination of any additional material and information provided with [Devin Waddell's] request for appeal." (Mrs. Waddell's Mot. for Summ. J. Ex. 1, 228-30.) Accordingly, application of the ERISA analysis is appropriate in reviewing MetLife's decision.

■ Under this standard of review, which requires the court to look only to the facts known to the administrator at the time that the decision was made to deny benefits, the court finds that MetLife's decision is not "wrong" and must be affirmed. *See Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1550 (11th Cir.1994). More specifically, the SPD explains that in order to change a beneficiary the insured must:

> contact the insurer ... for the appropriate form. After you complete the form, return it to the insurer. Your change takes effect on the date you sign the form, even if you are not alive when the insurer receives it.

(Mrs. Waddell's Mot. for Summ. J. Ex. 2, 7.) The Basic Policy and the Term Policy contain the following identical language, which is also in accord with the SPD:

> You may change the Beneficiary at any time by filing a new form with us. You do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date you signed it. The change of Beneficiary will take effect even if you are not alive when it is received.

(Mrs. Waddell's Statement of Undisputed Material Facts ¶ 25.) Lanier Waddell did not return the Forms to MetLife. The Term Policy defines "You" as the Covered Person on the Certificate Specifications Page. (Mrs. Waddell's Mot. for Summ. J. Ex. 3; 4.) The Basic Policy defines "You" as the Covered Person for Personal Benefits. (Mrs. Waddell's Mot. for Summ. J. Ex. 4, 5.) The Covered Person is the Retired Employee on whose Account benefits are in effect under the Plan. (*Id.* at 8.) It is not disputed that the Covered Person is Lanier Waddell. The policies clearly require that Lanier Waddell "return" or "file" the Forms.

Devin Waddell argues that it would be a "troublesome," "tortured," "strained," and "overly restrictive" interpretation to suggest that only Lanier Waddell could have returned/filed the Forms. The court agrees. As Devin Waddell argues, had Lanier Waddell asked someone to send the Forms for him and that person did so, that might have been sufficient. However, that is not what happened. There is no evidence that Lanier Waddell arranged to have the Forms sent by anyone. Lanier Waddell died on December 23, 2013. The Forms were not sent to MetLife until April 29, 2014, and they were sent by Morris. There is no evidence that Lanier Waddell had requested Morris or Devin Waddell to send the Forms to MetLife. In fact, Devin Waddell states in his declaration that he first found the Forms "[i]n the course of searching through [his father]'s papers after he died." (Devin Waddell Decl. ¶ 7.) While the alleged signatures on these Forms may have been an indication of

Lanier Waddell's intent,[4] the policies also require that he intended to return the Forms. Lanier Waddell could have signed the Forms and then changed his mind and decided not to send them and actually effectuate the changes. There is no evidence that Lanier Waddell intended to take that last step to change the beneficiary. Accordingly, the court finds that MetLife's decision to deny benefits to Devin Waddell was supported by substantial evidence in the record and was not "wrong."

■ Even under the *de novo* standard of review, which entails considering all evidence before the court, including those not known to MetLife prior to its decision to deny benefits, the court finds that the record does not support Devin Waddell's assertion that Lanier Waddell complied with the policy's requirements for changing the beneficiary. More specifically, Devin Waddell submitted a declaration of J. Kevin Tharpe ("Tharpe"), an attorney whom Lanier Waddell hired in 2007 to assist him in making an estate plan for himself and Ann Waddell. (Tharpe Decl. ¶ 4.) According to his declaration, Tharpe determined and informed Lanier Waddell that Ann Waddell would be supported by substantial financial resources after Lanier Waddell's death. (*Id.* at ¶ 5.) In light of this, Lanier Waddell wanted to pass all of his remaining assets at his death to his son, Devin Waddell, and Leisa Michelle Hardage ("Hardage"), whom he had long considered and treated as his daughter. (*Id.* at ¶ 6.) Tharpe drafted a last will and testament (the "Will") and a revocable living trust (the "RLT") for Lanier Waddell intended eventually to pass all of his property, both personal and real, to Devin Waddell and Hardage. (*Id.* at ¶¶ 6-8.) The signed original Will has never been found, although the signed original RLT to which it referred was found. (Devin Waddell's Statement of Undisputed Material Facts ¶ 35.) The Will does not mention life insurance proceeds. Ann Waddell and Devin Waddell are the heirs at law of the Estate. (*Id.* at ¶ 36.) Devin Waddell states that he expects to inherit nothing from the Estate. (*Id.* at ¶ 37.)

During the pendency of the Probate Court action filed by Ann Waddell's daughters to remove Lanier Waddell as her conservator, Lanier Waddell asked Tharpe to assist him in designating his RLT as the beneficiary of his life insurance policies.[5] (Tharpe Decl. ¶ 10.) Tharpe advised Lanier Waddell to obtain the necessary insurance beneficiary forms from MetLife. (*Id.* at ¶ 11.) Tharpe states that he is familiar with Lanier Waddell's signature and affirmatively states that the signatures on the forms are the signatures of Lanier Waddell. (*Id.* at ¶ 12.) Tharpe also states that "[a]lthough the beneficiary designation forms name Devin and not the RLT as beneficiary, it was in keeping with [their] arrangement for [Lanier Waddell] to obtain, fill out, and sign such forms, as activities that he undertook to perform to carry out his estate plan." (*Id.* at ¶ 13.)

Devin Waddell also submitted a declaration of Carolyn Davis ("Davis"), a caretaker who worked for seven or eight years for

---

4. Mrs. Waddell disputes that this has been established because Lanier Waddell had a signature program on his computer. The court notes that no expert report has been submitted with regard to the authenticity of Lanier Waddell's signature.

5. In a letter dated March 8, 2012, Tharpe confirmed that he "will be assisting [Lanier and Ann Waddell] with the following legal services: 1. Court-Conservatorship; 2. RLT Life insurance designations." (Tharpe Decl. Ex. D.)

Lanier Waddell helping to take care of Ann Waddell. (Devin Waddell's Statement of Undisputed Material Facts ¶ 13.) Davis states, among other things:

> Before he died, [Lanier Waddell] told me that he was changing his life insurance beneficiary to Devin Waddell, his son. [Lanier Waddell] said he had hired ... [Tharpe] to do that, but that [Tharpe] hadn't done it... I was aware that [Lanier Waddell] was angry and upset with Jennifer Johnston and Debbie Mott, his step-daughters, because of things they had said about him as Conservator for Ann.... A couple of weeks before he died, ... he got some forms to make the changes.... I saw [Lanier Waddell] filling them out, and a little while later that day I noticed they were on a table near the fax machine. [Lanier Waddell] was showing a lot of stress at the time ... so I asked him if he was going to send them and he said, "Yes, right now." Then he picked them up and moved over toward the fax machine, which is how he usually sent papers like that.... A few days later I saw the same papers sitting on a table again.... Because he was under so much stress, I wanted to be sure he hadn't forgotten to send the papers, so I asked him if he had sent them and he said, "Yes." Then I asked if he wanted me to put them in the mail and he said "I've got it" which I took to mean that he had done whatever was needed to get them to where they needed to go. Because I had seen him taking them to the fax machine, I got the impression he had faxed them. On the Thursday before he died, [Lanier Waddell] ... [was] very angry ... [and] said, "I'm going to call those insurance people and see if they got those papers." I found [Lanier Waddell] dead in his home the following Monday morning when I arrived for work. I believe and understood from everything [Lanier Waddell] did and said to me that he intended in December of 2013 to change the beneficiaries on his life insurance policies and make Devin [Waddell] the beneficiary.... I also believe, based on what I saw and on what [Lanier Waddell] said to me, that he intended to fax the forms and that he either faxed them or at least tried to fax them. I got the impression from [Lanier Waddell]'s words and actions that he thought he had successfully sent them and changed the beneficiary to Devin [Waddell]. I believed then and still do now that he did everything he thought was necessary to change beneficiaries.

(Davis Decl. ¶¶ 3–7.)

The additional evidence submitted by Devin Waddell does not establish that Lanier Waddell returned or even intended to return the Forms to MetLife. There is no evidence that Lanier Waddell requested either Tharpe[6] or Davis to send the Forms. There is no evidence that either Tharpe or Davis witnessed Lanier Waddell attempting to send the Forms. Davis saw [Lanier Waddell] picking up the Forms and moving toward the fax machine. (*Id.* at ¶ 4.) The fact that Davis "got the impression he had faxed them" is a far cry from Davis' witnessing Lanier Waddell's faxing

---

**6.** To the extent that Lanier Waddell had hired Tharpe to change the beneficiary of his life insurance policies, Lanier Waddell was aware that Tharpe had not done so. (Davis Decl. ¶ 3.) Consequently, Lanier Waddell appears to have undertaken to accomplish the change by allegedly obtaining the beneficiary forms. (Davis Decl. ¶ 4.) The court notes that although Davis suggests that Lanier Waddell obtained the beneficiary forms, there is no evidence in the record as to when and how the forms were obtained. (*Id.*)

the Forms.[7] (*Id.* at ¶ 5.) When Davis asked Lanier Waddell "if he wanted her to put [the Forms] in the mail ... he said 'got it' which [Davis] took to mean that he had done whatever was needed to get them to where they needed to go." (*Id.*) As Davis acknowledges, this was her understanding of the situation. Although Lanier Waddell told Davis that he was going to call Met-Life to see if it received the Forms, he did not do so. (*Id.* at ¶ 6.) Furthermore, the record does not entirely support the assertion that Lanier Waddell intended for Devin Waddell to receive the benefits from the policies. According to Tharpe, Lanier Waddell wanted to name the RLT as the beneficiary of the policies, which would eventually benefit Devin Waddell and Hardage. Lanier Waddell's intent would not have been effectuated by the Forms, which named only Devin Waddell as the beneficiary.

Although Davis states that Lanier Waddell was distressed and upset, there is no evidence that Lanier Waddell was ill or incapacitated. According to Bishop's declaration, in the month of December prior to his death, Lanier Waddell made a CD Rom and mailed it to Bishop via U.S. Mail, wrote checks, scanned and emailed documents, instructed Bishop on the use of Adobe Acrobat including making modifications and adding signatures, drove twice to meet her at a distance of over ten miles, and cared for Ann Waddell daily. (*Id.* at ¶ 4.) Bishop states in her declaration that "[b]ased upon [her] dealing with Lanier ... Waddell, [she] found him to be well above average in his technological capabilities, competent and able-bodied up until he passed away on December 23, 2013." (*Id.*

at ¶ 3.) Lanier Waddell did not send the Forms to MetLife even though he had the opportunity and capability of doing so. Lanier Waddell did not ask anyone else to send in the Forms before he died. Accordingly, even under *de novo* review, the court finds MetLife's decision to deny benefits to Devin Waddell is not "wrong."

 Devin Waddell next argues that MetLife has no right to demand strict compliance with the policies' requirements for changing beneficiaries since an interpleader is an equitable remedy. Although it is not clear whether the Eleventh Circuit has expressly adopted the doctrine of substantial compliance, the district courts in this circuit have applied it as follows:

> [A]n insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

*Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir.1994). Applying this doctrine, the court finds that Lanier Waddell did not substantially comply with the change of beneficiary provisions. First, as set forth in detail above, the evidence in the record does not necessarily indicate that Lanier Waddell intended to make the change of beneficiary to Devin Waddell. According to the Will and the RLT, Lanier Waddell intended to eventually pass all of his property to Devin Waddell and Hardage, not just to Devin Waddell. (Tharpe

---

7. The court also notes that there is no record of the fax machine's usage history. If Lanier Waddell had faxed the Forms or attempted to fax the Forms, such record would so indicate. Davis's "belief" that Lanier Waddell had done so is speculation.

Decl. ¶¶ 6-8.) Second, even if Lanier Waddell obtained the beneficiary forms, filled them‾ out, and signed them on December 12, 2013, there is no evidence of Lanier Waddell's having undertaken the required "positive action" of returning the Forms.

In *Life Ins. Co. of North America v. Leeson,* 81 Fed.Appx. 521 (6th Cir.2003), the insured had designated his sister as the beneficiary of his life insurance in the form that was on file with the insurance company. *Id.* at 522. Shortly after his death, his wife sent the insurance company a change of beneficiary form dated some four months prior to his death that named her as the sole beneficiary. *Id.* The Sixth Circuit held that the insured's "actions did not meet the requirements of the change-of-beneficiary provision of the policy, specifically the requirement that the insured give written notice to his employer or to the insurance company ... [because] although [the insured] may have filled out the·form, he never actually gave the form either to the insurance company or to his employer." *Id.* at 524. The Sixth Circuit noted that " 'substantial compliance' requires that the insured do 'all that he reasonably could do to meet the conditions of the policy' " and held that "[i]t can fairly be argued that [the insured] took steps toward changing the beneficiary in this case, but it cannot be concluded that he did all that he reasonably could have done." Similarly, while Lanier Waddell may have taken steps toward changing the beneficiary by filling out the new forms, he did not send them even though he had the opportunity and was fully capable of doing so. Even if Lanier Waddell attempted to fax the Forms, he did not do "all that he reasonably could have done" to successfully fax the Forms. The evidence shows that Lanier Waddell was reasonably technologically savvy. He appears to have routinely used the fax machine. He did not take the steps to make certain that the fax was sent. Accordingly, Lanier Waddell's actions did not constitute substantial compliance.

Devin Waddell asserts that the provision "the change of beneficiary will take effect even if you are not alive when it is received" cannot be read so restrictively to require that a form be sent prior to an insured's death and just not received until afterwards. The court does not disagree. For example, in *First Capital Life Ins. Co.–in Conservation v. AAA Commc'ns, Inc.,* 906 F.Supp. 1546 (N.D.Ga.1995), an insured company completed the change of beneficiary form and gave it to the insurance agent, who failed to forward the form. *Id.* at 1558–60. The court found that this was substantial compliance "[b]ecause [the insured company] did all that it could possibly have done to change the named beneficiary of the Policy." *Id.* at 1553. That court stated that sending in the change of beneficiary designation form by the insurance agent was merely a "ministerial action" needed to complete the desired change. *Id.* In this case, however, Lanier Waddell did not do all that he could possibly have done to change the beneficiary. He did not return the Forms, and he did not ask anyone else to return the Forms. This is not a case involving a third party's failing to return the Forms. Lanier Waddell was not prevented from sending the Forms "because of an administrative glitch over which [he] had no control." *Id. See also Phoenix Mut. Life Ins. Co.,* 30 F.3d 554, 567–68 (4th Cir.1994) (finding substantial compliance where the insured took affirmative action to effectuate his change of beneficiary by visiting his employer's office and signing a "Dual Purpose" form and calling the Financial Manager to confirm the change and the only reason the change

was not completed was because the Financial Manager failed to make the change). The evidence in the record does not support a finding of substantial compliance in this case.

 Finally, in his appeal letter of April 29, 2014, Morris argued that the Term Policy's provision regarding the payment of benefits if there is no designation of a beneficiary at time of death was "patently ambiguous" and granted MetLife an "impermissible level of discretion." Devin Waddell argues that any ambiguity in the beneficiary change provisions must be construed against MetLife in accordance with the principle of *contra proferentem. Lee,* 10 F.3d at 1551. The court does not find ambiguity in the provisions. While the policy does not use the words "in order" as the SPD does, the use of an a, b, c, and d series indicates the line of succession. As the spouse, Ann Waddell is first in line. Further, MetLife has discretion under the Term Policy to interpret plan provisions and make these decisions. MetLife's interpretation of this provision was not unreasonable.

## III. Conclusion

For the foregoing reasons, the court hereby **GRANTS** the motions for summary judgment filed by defendants Ann Marshall Waddell and Anne Marie Bishop [39, 40] and **DENIES** the motion for summary judgment filed by defendant Devin Lanier Waddell [41]. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED,** this 5th day of July, 2016.